**LAKE NACIMIENTO RANCH CO.,**
Plaintiff-Appellant,

v.

**COUNTY OF SAN LUIS OBISPO,**
Defendant-Appellee.

Nos. 85–6475, 86–5858.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 9, 1987.

Decided Oct. 15, 1987.

As Corrected Oct. 30, 1987.

Michael M. Berger and M. Reed Hunter, Los Angeles, Cal., for plaintiff-appellant.

Vicki E. Land and Thomas F. Winfield, III, Los Angeles, Cal., for defendant-appellee.

Before HALL, NOONAN and THOMPSON, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Plaintiff, Lake Nacimiento Ranch Company (Ranch) brought this action against the County of San Luis Obispo (County), alleging that the County's restrictions on its property accomplished an unconstitutional taking. The Ranch also claims that the County Board of Supervisors violated its right to due process because one of the voting supervisors had a conflict of interest. The district court granted summary judgment in favor of the County, which the Ranch now appeals. The district court also denied the County's request for attorneys' fees, which the County appeals.

## I. Overview

Lake Nacimiento is an artificial reservoir created in 1960 and located in northern San Luis Obispo County. As required by California law, the County has a comprehensive long-term General Plan for development, which includes a Land Use Element. See Cal.Gov't Code § 65302 (West 1983). The Land Use Element describes the County's official policy on the location, growth and development of land uses. Id. § 65302(a). The County also has a zoning ordinance, called the Land Use Ordinance, which states the County's development standards and review procedures.

The County adopted the Nacimiento/San Antonio General Plan in 1971. In 1980, the County amended the Land Use Element and the Land Use Ordinance, reducing the allowed residential densities and reclassifying most of the remaining privately-owned, undeveloped land around the lake from a "Recreation" zone to a more restrictive "Rural Lands" zone. The Rural Lands category, like the Recreation category, expressly permits single-family residences and light agricultural uses. In fact, the Rural Lands category outlines 8 groups of allowed uses and 42 groups of special uses.

The property which is the subject of this action is owned by the Ranch and comprises approximately 1,500 acres bordering the south shore of Lake Nacimiento. The Ranch acquired the property in 1964.[1] Since that time, the property has been held for investment and leased in the interim for cattle and horse grazing and for equestrian purposes. The 1980 amendments to the County's General Plan changed the land use designation for almost all of the Ranch's property from Recreation to Rural Lands.

In 1981, the Ranch applied for an amendment to the General Plan, requesting the redesignation of 800 acres of the property as a Recreation zone. On November 19, 1981, the County Planning Commission unanimously recommended the adoption of the requested amendment. On December 14, 1981, the County Board of Supervisors voted 3–2 to deny the Ranch's proposed amendment.

One of the supervisors voting against the amendment, Howard Mankins, was a mem-

---

1. The property was acquired as part of a 3,000 acre parcel. The Ranch paid about $1 million for the entire parcel. Part of the parcel has been sold.

ber of the Cal-Shasta Club, a private, non-profit recreational organization owning property contiguous to the Ranch's property. The Cal-Shasta Club openly opposed the Ranch's application for an amendment. Had the amendment been enacted, more people would have had access to lake-shore properties for recreational purposes, thereby diluting the degree of exclusive use enjoyed by club members. The Ranch claims that Mankins owns a cabin, a boat dock, and has an interest in the common realty of the Cal-Shasta Club. Mankins did not disclose his membership in the Cal-Shasta Club or these alleged interests at the December 14 hearing or in the financial interest statements required by California law. *See* Cal.Gov't Code §§ 87100–03 (West 1987).

On June 11, 1982, the Ranch initiated this action against the County. The Ranch alleges two causes of action. First, the Ranch claims that the County's General Plan and its Land Use Ordinance so restrict the Ranch's ability to develop its property that they accomplish an unconstitutional taking of the property in violation of the fifth and fourteenth amendments. The Ranch requests orders invalidating, and enjoining the County from enforcing, the 1980 amendments as they apply to the Ranch. It also requests damages under 42 U.S.C. § 1983 for the taking. Second, the Ranch claims that under 42 U.S.C. § 1983, California law, and the United States Constitution it was denied its fourteenth amendment right to due process because Supervisor Mankins voted against the Ranch's proposed amendment despite his alleged, undisclosed conflict of interest. Pursuant to this cause of action, the Ranch requests damages and one of the following: either the invalidation of the vote of the Board of Supervisors and the sustaining of the Planning Commission's recommendation approving the amendment, or the invalidation of the 1981 decision changing the land use designation to Rural Lands.

The district court, in its unpublished opinion, granted the County's motion for summary judgment as to the Ranch's taking cause of action. Both parties moved for summary judgment as to the due pro-cess cause of action, and the district court granted the County's motion. The Ranch now appeals these decisions. The County also appeals from the district court's denial of its motion for attorneys' fees under 42 U.S.C. § 1988.

## II. *The Ranch's Taking Claim*

On appeal, the Ranch argues that the district court erred in granting the County's summary judgment motion on the taking claim. We review the district court's grant of the County's summary judgment motion de novo. *Martino v. Santa Clara Valley Water District,* 703 F.2d 1141, 1145 (9th Cir.), *cert. denied,* 464 U.S. 847, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983). We must determine, viewing all evidence and factual inferences in the light most favorable to the Ranch, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986).

### A. *Standards For a Motion for Summary Judgment*

The Ranch claims that the district court failed to view the evidence in the light most favorable to the Ranch as the nonmoving party. The district court is obliged to apply this standard in considering a summary judgment motion, *Twentieth Century-Fox Film Corp. v. MCA, Inc.,* 715 F.2d 1327, 1328–29 (9th Cir.1983), and it apparently did so. Throughout its opinion, the district court accepted the Ranch's version of the material facts, unless the Ranch failed to submit evidence supporting its version. Therefore, the district court applied the correct standard in viewing the facts.

The Ranch also claims that the district court erroneously placed the burden of proof on the Ranch, and not on the County. The Ranch misunderstands its own burden of proof, which has been clarified by the Supreme Court's recent decision, *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ Under *Celotex,* the Ranch, as the nonmoving party, may avoid summary

judgment against it only by making "a showing sufficient to establish the existence of an element essential to [its] case, and on which [the Ranch] will bear the burden of proof." 106 S.Ct. at 2552–53. In contrast, the County, as the party seeking summary judgment, "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 2553. The County was not required to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* (emphasis in original). The district court properly required the Ranch to make "sufficient showings" supporting the essential elements of its case whenever the Ranch would have carried the burden of proof at trial.

### B. *The Ranch's "As Applied" Challenge*

■ The Ranch claims that the district court failed to address its claim that the General Plan, the Land Use Ordinance, and the Board of Supervisors' denial of the amendment "as applied" to its property accomplished an unconstitutional taking. The Ranch argues that the district court only addressed its "facial" challenge to these County actions. This is not the case. The district court decided that the Ranch's "as applied" taking claim was not ripe for consideration. We review de novo the district court's ruling that the Ranch's claim was not ripe. *Assiniboine and Sioux Tribes v. Board of Oil and Gas,* 792 F.2d 782, 787 (9th Cir.1986).

■ In order for an "as applied" regulatory taking claim to be ripe, a plaintiff must establish two components: (1) that the regulation has gone so far that it has "taken" plaintiff's property; and (2) that any compensation tendered for such taking is not "just." *MacDonald, Sommer & Frates v. Yolo County,* 477 U.S. 340, 106 S.Ct. 2561, 2566, 91 L.Ed.2d 285 (1986); *Kinzli v. City of Santa Cruz,* 818 F.2d 1449, 1453, *modified,* 830 F.2d 968 (9th Cir.1987). To establish that the regulation

has "gone too far," the Ranch must show that the County has made "a final and authoritative determination of the type and intensity of development legally permitted on the subject property." *MacDonald,* 106 S.Ct. at 2566. This final determination requires two decisions against the Ranch: a rejected development plan and the denial of a variance. *Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 187–88, 105 S.Ct. 3108, 3117–18, 87 L.Ed.2d 126 (1985); *Kinzli,* 818 F.2d at 1454.

The Ranch admits that it has submitted to the County only an *informal* development proposal for a private membership recreational vehicle club in conjunction with its request for an amendment to the Land Use Ordinance. The County's response to the informal request shows that it viewed the proposal as "tentative." The County's response specified the numerous deficiencies in the informal proposal and suggested ways to remedy them. In light of these facts, the County's denial of this informal request is not a final and authoritative decision exposing the nature and extent of permissible development under the Rural Lands classification. *See MacDonald,* 106 S.Ct. at 2567–69.

The Ranch correctly argues that it can avoid the ripeness requirement of a final determination if it can show that the submission of a development plan and an application for a variance would be futile. *American Savings and Loan Ass'n v. County of Marin,* 653 F.2d 364, 371 (9th Cir.1981). The Ranch has the "heavy burden" of showing futility. *Id.* The Ranch cannot, at this point, meet this burden. As explained in *Kinzli,* "at least one meaningful application" for a development project must be made. *Kinzli,* 818 F.2d at 1454–55 (emphasis in original). In addition, the Ranch must have also made a meaningful application for a variance under the zoning ordinance. *Id.* at 1455 n. 6. Since the Ranch has failed to submit such applications, it may not argue that it would be

futile to secure a final determination from the County.[2]

## C. *The Ranch's Facial Challenge*

■ As the district court properly recognized, the Ranch may challenge the zoning restriction on the basis that the "mere enactment" of the restriction constitutes a taking of its property. *Agins v. Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980); *Martino*, 703 F.2d at 1146 n. 2. The Ranch, however, faces an "uphill battle in making a facial attack on the [zoning restriction] as a taking." *Keystone Bituminous Coal Ass'n v. DeBenedictis*, — U.S. —, 107 S.Ct. 1232, 1247, 94 L.Ed.2d 472 (1987). The district court, therefore, properly placed the burden of proof on the Ranch.

■ The County's zoning restriction is facially invalid if: (1) it does not substantially advance legitimate state interests, or (2) it denies an owner economically viable use of his land. *Agins*, 447 U.S. at 260, 100 S.Ct. at 2141; *Hodel v. Virginia Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 295–96, 101 S.Ct. 2352, 2370, 69 L.Ed.2d 1 (1981). The County's ordinance meets the first test, *see Cormier v. County of San Luis Obispo*, 161 Cal.App.3d 850, 207 Cal.Rptr. 880 (1984), and the Ranch does not argue otherwise.

Under the second test, the precise meaning of "economically viable use" of land is elusive and has not been clarified by the Supreme Court. *MacLeod v. County of Santa Clara*, 749 F.2d 541, 548 (9th Cir. 1984), *cert. denied*, 472 U.S. 1009, 105 S.Ct. 2705, 86 L.Ed.2d 721 (1985). The Ranch argues that "economically viable use" of property means use which allows the owner to earn a reasonable return on his investment. The Ranch essentially argues that the County's regulation deprives it of the economically viable use of the property because it may not recoup its "profit expectation."

This test for "economically viable use" was specifically rejected for facial challenges to zoning restrictions. In *William C. Haas v. City and County of San Francisco*, 605 F.2d 1117 (9th Cir.1979), *cert. denied*, 445 U.S. 928, 100 S.Ct. 1315, 63 L.Ed.2d 761 (1980), this court explained that in facial challenges, the fact that a development restriction prevents an owner from recovering its initial investment or a favorable return on its investment does not mean that that restriction is constitutionally defective. *Id.* at 1121. "[D]isappointed expectations in that regard cannot be turned into a taking...." *Id.* This principle was affirmed in *Hamilton Bank*; the question of whether a regulation interferes with one's reasonable investment-backed expectations may only be answered in the context of an "as applied" challenge. 473 U.S. at 190–91 & n. 12, 105 S.Ct. at 3119–20 & n. 12.[3]

Under *Agins* and *Hodel*, the test for whether a development restriction denies the Ranch the economically viable use of its property focuses on the existence of permissible uses. *Agins*, 447 U.S. at 262, 100 S.Ct. at 2142; *Hodel*, 452 U.S. at 296, 101 S.Ct. at 2370; *Haas*, 605 F.2d at 1120–21. The Ranch bears the ultimate burden

**2.** The recent Supreme Court decision in *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, — U.S. —, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), is consistent with the Supreme Court's previous rulings dealing with ripeness. In *First English Evangelical*, the Court held that the taking claim was ripe because the state court below had assumed that a taking had occurred. *Id.* 107 S.Ct. at 2384. The Court thereby distinguished its rulings in *MacDonald* and in *Agins*. *Id.* *See also Kinzli*, 830 F.2d at 968 n. *.

**3.** A close look at the cases adopting the "reasonable investment-backed expectation" test shows that this test only was relevant to "as applied" challenges. *See Penn Central Transportation*

*Co. v. New York City*, 438 U.S. 104, 136, 98 S.Ct. 2646, 2665, 57 L.Ed.2d 631 (1977) (reasonable return is relevent in determining the severity of the regulation's impact on the specific plaintiffs); *MacLeod v. County of Santa Clara*, 749 F.2d 541, 547–48 (9th Cir.1984) (focus is on the injury suffered from the County's denial of the development permit). The inapplicability of the Ranch's test for economically viable use is underscored by the fact that cases after *Penn Central* have set forth the test for facial challenges without including "interference with reasonable investment-backed expectations." *See, e.g., Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980).

of proof in showing that the restriction, on its face, denies beneficial uses. *See Keystone*, 107 S.Ct. at 1247 (plaintiffs face an uphill burden in making a facial attack); *Hodel*, 452 U.S. at 296–97, 101 S.Ct. at 2370–71 (Court scrutinized the restriction's language, yet did not require the governmental entity to prove the availability of beneficial uses); *Agins*, 447 U.S. at 262, 100 S.Ct. at 2142 (same).

The district court found that the Ranch had failed to make a sufficient showing that there was no available beneficial use under the General Plan and Land Use Ordinance.[4] Specifically, the district court held that the Ranch failed to submit any evidence showing that a dude ranch in combination with other uses (other than a working ranch) was not economically viable. Moreover, the availability of both a variance under Land Use Ordinance § 22.01.044 and of additional special uses under § 22.08.120 strongly suggests that there are other economically beneficial uses not expressly included. This fact alone logically prevents the ordinance from being overrestrictive on its face, since the Ranch could apply for a variance or waiver of the restrictions.

### III. *Conflict of Interest*

The Ranch claims that the County deprived it of due process in passing the 1980 General Plan and in denying the amendment sought by the Ranch. The basis for this claim is the Ranch's allegation that Supervisor Mankins participated in and voted on these matters despite his personal financial interest therein, stemming from his interest in the cabin, boat dock, and in real estate owned by the Cal-Shasta Club. The district court relied on two grounds in granting the County's motion for summary judgment on this claim. First, the court held that the Ranch's 42 U.S.C. § 1983 claim for violation of procedural due process is improper since California's Political Reform Act of 1974[5] provides a statutory remedy for the violation. Second, the district court held that there was no evidence showing that the alleged deprivation of due process under section 1983 was the result of County policy or custom.

### A. *Official Policy or Custom*

■ The district court granted summary judgment because the Ranch failed to present any evidence showing that the County had a policy or custom of allowing financially interested officials to participate in decision-making. In its complaint, the Ranch did not allege that the County had such a policy. The Ranch, however, claims that because Mankins was an official who himself made policy, his act of voting constituted official County policy.[6] The district court properly rejected this argument.

42 U.S.C. § 1983 requires that a deprivation of constitutional rights occur "under color of" state law. The County, as a municipality, may be liable under section 1983 only if the alleged violation was pursuant to "official municipal policy." *Monell v. New York City Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). In *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986),

---

**4.** It is important to note that the Land Use Ordinance itself incorporates an extensive list of available uses, including single family dwellings. The County presented five specific uses it believed were economically viable.

**5.** Under California Government Code § 87100, a public official is barred from participating in a governmental decision "in which he knows or has reason to know he has a financial interest." Cal.Gov't Code § 87100 (West 1987). Under section 91003, the Ranch is able to bring an action for injunctive relief Cal.Gov't Code § 91003 (West 1987). Under section 91004, damages are available. Cal.Gov't Code § 91004 (West 1987). The Ranch is incorrect in arguing that damages

are only available if they are sought by a prosecutor, since the statute states that damages are available in actions brought by "a person residing within the jurisdiction." *Id.*

**6.** On appeal, the Ranch argues that the County waived any claim that Mankins acted contrary to County policy because throughout this litigation, the County has asserted Mankins' right to vote. Apparently, the Ranch offers this theory for the first time on appeal. We decline to address this argument, since it was not raised below. *Rainbow Pioneer No. 44–18–04A v. Hawaii-Nevada Investment*, 711 F.2d 902, 905 (9th Cir.1983).

the Supreme Court explained the circumstances under which the actions of an official constitute "official municipal policy." *Id.* 106 S.Ct. at 1299–1300. The Court stated that "municipal liability under section 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials *responsible for establishing final policy* with respect to the subject matter in question." *Id.* at 1300 (emphasis added).

The Ranch erroneously argues that the "subject matter in question" is the actual decision regarding the zoning restrictions. This argument is based upon the Ranch's mistaken attempt to piggyback its taking claim on its procedural due process claim. The "subject matter in question," however, is Mankins' *participation* in the decision-making process despite his alleged conflict. This participation is the source of any denial of procedural due process. *See id.* at 1300 ("subject matter" is law enforcement practices, not the indictment which resulted from such practices).

The question of whether Mankins had such "final policy-making authority" is a question of California law. *See id.* Under California law, Mankins did not have final authority to establish the County's official policy regarding participation in decision-making by an official with a conflict of interest. The Board of Supervisors may only establish official policy by a majority of the supervisors. Cal.Gov't Code § 25005 (West 1968). The Board adopted Resolution No. 76–456 by unanimous vote, requiring disqualification whenever a conflict of interest exists. Since the Ranch presented no material evidence showing that the County approved Mankins' participation, the district court properly granted summary judgment for the County on this basis.

B. *Adequate State Remedies*

██ The Ranch also claims that the district court erred in holding that the availability of adequate state remedies defeated its due process claim. The district court relied upon *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981),

where the Supreme Court dismissed an inmate's section 1983 claim against prison officials for a deprivation of property in violation of his due process rights. The Court explained that the inmate had not stated a claim for relief under section 1983 since the inmate failed to seek adequate compensation through available state procedures. *Id.* at 543–44, 101 S.Ct. at 1916–17. The district court here held that *Parratt* required the Ranch to first seek compensation, available under California law, *see supra* note 5, before it could bring an action for deprivation of its right to procedural due process.

The Ranch argues that *Parratt*'s requirement of first seeking compensation through state procedures only applies to "prisoner" cases. This argument is meritless, since this requirement is broadly-stated and has been applied in cases other than those involving inmate actions against prison officials. *See, e.g., Mann v. City of Tucson*, 782 F.2d 790, 792–93 (9th Cir.1986) (search and seizure case).

The Ranch also argues that *Parratt* is not applicable since the Ranch alleges a violation of its *substantive* due process rights. The district court recognized that this issue is unresolved. *Cf. Mann*, 782 F.2d at 792–93 (*Parratt* not applicable where plaintiff is challenging the deprivation itself as opposed to procedural impropriety). Nevertheless, we need not decide this question. As discussed above, the Ranch's due process claim arising from Mankins' alleged conflict of interest is an attack on the decision-making process itself. The Ranch recasts its taking claim as a substantive due process claim, and then inappropriately links it to Mankins' conflict of interest. *See Hamilton Bank*, 473 U.S. at 199–200, 105 S.Ct. at 3123–24 (substantive due process claim is essentially the same as the taking claim). The Ranch is essentially claiming that this process was tainted by a voting supervisor's conflict of interest. This type of procedural claim is governed by *Parratt. Mann*, 782 F.2d at 792–93.

The Ranch also argues that the remedies available under California law are inade-

quate, such that *Parratt* is inapplicable. This argument is incorrect. First, *Parratt* applies whenever a *procedure* for redress of a deprivation of procedural due process is available. 451 U.S. at 543, 101 S.Ct. at 1916; *McRorie v. Shimoda*, 795 F.2d 780, 786 (9th Cir.1986). The fact that more remedies are available under section 1983 than are available under the state procedure is irrelevant under these circumstances. *Parratt*, 451 U.S. at 453–54, 101 S.Ct. at 1922. Second, in claiming that the remedy is inadequate, the Ranch once again erroneously focuses upon its injury from the alleged taking of the property. Therefore, the Ranch's section 1983 claim is barred because there is an available state remedy.[7]

#### C. *Claim under California Law and Under the Fourteenth Amendment*

■ The Ranch brought its due process claim under section 1983, California law, and under the the fourteenth amendment. As discussed above, the district court properly granted summary judgment for the County under section 1983. The district court also implicitly dismissed the claim as one under California law, and this decision was not an abuse of discretion. *Arizona v. Cook Paint & Varnish Co.*, 541 F.2d 226, 227 (9th Cir.1976), *cert. denied*, 430 U.S. 915, 97 S.Ct. 1327, 51 L.Ed.2d 593 (1977).

However, the district court did not address the question of whether the Ranch could bring its claim of deprivation of due process directly under the fourteenth amendment, irrespective of implementing civil rights legislation (i.e., section 1983).

The question of whether plaintiff may bring a direct cause of action under the fourteenth amendment is difficult and "extremely important," and has been left unanswered by the Supreme Court. *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 278, 97 S.Ct. 568, 571, 50 L.Ed.2d 471 (1977); *Aldinger v. Howard*, 427 U.S. 1, 4 n. 3, 96 S.Ct. 2413, 2415 n. 3 (1976). *See generally* 13B C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3573.1 & n. 20 (1984). On the record before us, we need not decide this issue. The Ranch has not clearly raised this issue,[8] and it has focused its case on section 1983.

#### IV. *Attorneys' Fees*

■ The County argues at length that the district court erred in denying its request for attorneys' fees under 42 U.S.C. § 1988. We review the district court's denial for an abuse of discretion. *Hensley v. Eckerhard*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983).

In light of this standard of review, we uphold the decision of the district court. The district court applied the proper test in finding that "there is absolutely no indication that the plaintiff's action was 'groundless or without foundation.'" *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). The County substantiates its claim that the district court abused its discretion by pointing to allegedly controlling Supreme Court decisions predating the final decision below. However, many questions raised by the Ranch have been decided only recently. *See, e.g., Kinzli* (1987); *Pembaur* (1986). Under these circumstances, we fail to find an abuse of discretion.

#### V. *Conclusion*

We affirm the decision of the district court. The Ranch's "as applied" challenge

---

**7.** The Ranch's claim under California law is not barred by the statute of limitations. Under the Political Reform Act, a claim must be filed within four years of the date of a violation. Cal. Gov't Code § 91000(c) (West 1987). However, under California's doctrine of equitable tolling of the statute of limitations, the statute may be tolled where: (1) a litigant has several legal remedies and pursues one remedy in good faith in another forum; (2) there is no tolling provision in the relevant statute; and (3) notice of the claim to defendant is timely. *Nelson v. International Paint Co.*, 716 F.2d 640, 645 (9th

Cir.1983); *Addison v. State*, 21 Cal.3d 313, 318–19, 146 Cal.Rptr. 224, 226–27, 578 P.2d 941, 942–43 (1978).

**8.** At oral argument, the Ranch stated that it believed it had a direct cause of action under the fourteenth amendment for its taking claim. It apparently does not argue that it has a direct cause of action for a procedural due process violation. At least it fails to cite any authority or clearly state this claim.

is not ripe for consideration; its facial challenge is unsupported. The claim based upon conflict of interest fails under section 1983. Finally, the district court did not abuse its discretion in denying the County's request for attorneys' fees.

AFFIRMED.