[No. F011310. Fifth Dist. Jan. 11, 1990.]

TWAIN HARTE ASSOCIATES, LIMITED et al., Plaintiffs and Appellants, v.
COUNTY OF TUOLUMNE et al., Defendants and Respondents.

**COUNSEL**

Wilson, Sher, Marshall & Peterson, Timothy F. O'Leary, W. Stephen Wilson and Lauren M. La Pietra for Plaintiffs and Appellants.

Stephen Dietrich, Jr., County Counsel, Leo J. Faulstich and Paul Griebel, Deputy County Counsel, for Defendants and Respondents.

**OPINION**

**DIBIASO, J.**—Appellants[1] sued for inverse condemnation and declaratory relief, alleging that the adoption of a Tuolumne County (the County) ordinance rezoning a portion of a parcel of real property they owned constituted a "taking" for which just compensation must be paid. The trial court granted summary judgment in favor of the County, on the ground no taking had occurred and owners had failed to exhaust available "administrative reme-

---

[1] The appellants, plaintiffs in the court below, are two limited partnerships, Twain Harte Associates, Limited, and 262 Grand Associates, Ltd. Hereafter, for convenience, they will be collectively referred to as "owners."

dies." The moving papers, however, disclose the existence of a triable issue of material fact on whether any attempt by owners to secure administrative relief from the ordinance would have been "futile." Thus, we reverse and remand.

The owners' complaint, filed October 23, 1987, contained two causes of action. The first count sought to plead a right to recover in inverse condemnation under the "Laws of California and Article I, section 19[2] of the Constitution of the state of California" on the ground a June 1987 "downzoning" deprived the [owners] of "all reasonable use of the property" and "prevented [owners] from receiving a fair return on [their] legitimate investment-backed expectations."

The second count, for declaratory relief, incorporated all the allegations of the first and prayed for a declaration that the downzoning ordinance was "invalid."

The County's answer denied all but a few of the averments of the complaint and set out a number of affirmative defenses.

On June 30, 1988, the County filed and served a notice of motion for summary judgment (Code Civ. Proc.,[3] § 437c), with accompanying documents. The County's papers took the position no triable issue of material fact existed and the action had no merit because: (1) "no claim lies in inverse condemnation under the California Constitution for a rezoning"; (2) "the parcel, taken as a whole, has substantial economic use remaining"; and (3) "[the owners have] failed to exhaust [their] administrative remedies."

Owners contested the motion. After hearing, the trial court issued its written ruling granting the motion. The decision read in its entirety: "Motion for summary judgment is granted, the Court finds there was no taking and no exhaustion of administrative remedies." Judgment was subsequently entered and appellants' timely appeal followed.

FACTS[4]

The 8.5-acre parcel of real property which is the object of this action is located in the Twain Harte unincorporated area of Tuolumne County. The

---

[2] Article I, section 19 provides in pertinent part: "Private property may be taken or damaged for public use only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner. . . ."

[3] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

[4] While some of the underlying facts were disputed, the result in this case is mandated by facts contained in the County's moving papers which were uncontested by owners. These unchallenged facts are summarized in this segment of our opinion.

parcel was originally created as part of the Black Oak Estates Unit 2 residential subdivision in April 1981. It was then owned by third persons not parties to the action below or to this appeal. In July 1981, the County issued to those third persons a development permit for the construction on the site of a shopping center with over 100,000 square feet of retail stores and offices. At the time the entire parcel was zoned C-1:O-Tx ("light commercial," with a building design permit requirement). The shopping center buildings were thereafter constructed along the south side of the property paralleling Twain Harte Drive and a parking lot was installed on the north side of the parcel. A 1.7-acre plot at the northern edge of the 8.5-acre parcel remained undeveloped after completion of the shopping center complex. The original construction permit did not include the plot in the shopping center development.

The residential lots of the Black Oak Estates Unit 2 subdivision were north of the 8.5-acre parcel and were separated from it by a county road. The 1.7-acre plot of undeveloped land, along with 15 to 20-foot wide landscaped strips elsewhere around the shopping center complex, served as a buffer between the complex and the residential lots.

After the shopping center was built, the entire 8.5-acre parcel was acquired by owners.

In June 1984, the County approved an amendment to the development permit which authorized the addition of 5,500 square feet to the center. In July 1984, it approved another amendment to the development permit which allowed the addition of 1,000 more square feet to the center. Neither amendment, nor any related proposal submitted to the County by the owners, contemplated development of any portion of the 1.7-acre plot. After the two additions were completed, the shopping center complex and parking lot occupied about 6.8 acres, substantially all of the original 8.5-acre parcel with the exception of the 1.7-acre undeveloped plot.

In March 1987 the owners applied to the County for approval of a parcel map which would split the entire 8.5-acre parcel into three separate parcels. The 6.8-acre shopping center and parking lot would be one parcel; the remaining 1.7-acre undeveloped plot would be divided into two new parcels of approximately 1 acre and .7 acres, respectively.

At the time the owners submitted their application for approval of the parcel map, the 1.7-acre plot carried the same "light commercial" zoning it had borne since creation of the entire 8.5-acre parcel in 1981. The proposed

parcel map did not disclose any desire on the part of the owners to develop, in whole or in part, either of the two new parcels.

On May 4, 1987, the department of transportation and engineering services denied the owners' application for approval of the parcel map. The owners did not appeal the determination to the board of supervisors.

On June 30, 1987, at the request of the planning director, the board of supervisors, after hearings before it and the planning commission, adopted Ordinance No. 1558, which rezoned the 1.7-acre undeveloped plot from its existing C-1:O-Tx designation to an "O," or "open space" designation. The stated purpose of the rezoning was to "insure land use compatibility between two conflicting land uses, residential and commercial."

The uses permitted under "open space" zoning are severely restricted. Generally, no uses are unconditionally allowed. Only recreational, farming, and public utility uses, and, in some instances, "roads, driveways, and bridges" are sanctioned if a "conditional use" permit is first secured. There is no provision in the applicable ordinance for commercial or related uses under any circumstances.

The owners filed suit upon the board's adoption of Ordinance No. 1558.

The planning director advised owners further development of the shopping center parcel might be possible if an appropriate application were made. The planning director also advised owners development might be allowed on the 1.7-acre undeveloped plot if appropriate mitigation measures were incorporated within any proposed project.

Owners have not applied for a variance under any relevant ordinance or statute with respect to the 1.7-acre undeveloped plot. Since 1984, owners have not sought the County's approval for any specific project on the 8.5-acre parcel.

## DISCUSSION

### I.

A. *Burden of Proof*

█ The burden of proof imposed upon a party who seeks summary judgment under section 437c is substantial. Where, as here, a defendant is the moving party, its evidence submitted in support of the motion must

either disprove at least one essential element of every cause of action of the plaintiff's complaint or prove an affirmative defense that would bar every cause of action of the complaint. (*Frazier, Dame, Doherty, Parrish & Hanawalt* v. *Bocardo, Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331, 338 [138 Cal.Rptr. 670]; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (Rutter 1989) § 10:125 rev. #1, 1989.)

Accordingly, if a properly noticed motion for summary adjudication (§ 437c, subd. (f)) is not also before the court[5] and the defendant's proof leaves at least one plausible theory or basis of recovery unchallenged, the burden is not met and plaintiff's failure to oppose the motion is immaterial. (*Conn* v. *National Can Corp.* (1981) 124 Cal.App.3d 630, 639 [177 Cal.Rptr. 445]; *Nazar* v. *Rodeffer* (1986) 184 Cal.App.3d 546 [229 Cal.Rptr. 209]; Weil & Brown, *supra*, § 10:126 rev. #1, 1989.) That the plaintiff will have the affirmative burden of proof at trial is of no consequence. (*Security Pac. Nat. Bank* v. *Associated Motor Sales* (1980) 106 Cal.App.3d 171, 179 [165 Cal.Rptr. 38]; Weil & Brown, *supra*, § 10:133 rev. #1, 1989.)

B. *Standard of Review*

■ Appellate review is limited to the facts contained in the documents presented to the trial judge. We exercise our independent judgment as to the legal effect of the undisputed facts disclosed by the parties' respective papers on the motion and outlined earlier in this opinion. (*Bonus-Bilt, Inc.* v. *United Grocers, Ltd.* (1982) 136 Cal.App.3d 429, 442 [186 Cal.Rptr. 357].)

II.

With the foregoing factual and legal prologue in mind, we now turn to the substantive aspects of this appeal.

■ Article I, section 19, of the California Constitution guarantees private property shall not be taken for public use without the payment of just compensation to the owner. Governmental land use regulations may in some instances effect a "taking." (*Penna. Coal Co.* v. *Mahon* (1922) 260 U.S. 393, 413 [67 L.Ed. 322, 325, 43 S.Ct. 158, 28 A.L.R. 1321]; *First Lutheran Church* v. *Los Angeles County* (1988) 482 U.S. 304, 316 [96 L.Ed.2d 250, 264-265, 107 S.Ct. 2378].) However, not every sovereign act with respect to property requires compensation. "Government hardly could

---

[5] The County's moving papers did not include an alternative request for summary adjudication of any issue.

go on if to some extent values incident to property could not be diminished without paying for every such change in the general law." (*Penna. Coal Co. v. Mahon, supra*, 260 U.S. at p. 413 [67 L.Ed. at p. 325].) Thus, the United States Supreme Court has upheld land use regulations which destroyed or adversely affected recognized real property interests (*Penn Central Transp. Co. v. New York City* (1977) 438 U.S. 104, 125 [57 L.Ed.2d 631, 648-649, 98 S.Ct. 2646]), such as where they prohibited a beneficial use to which the property might be put (*Goldblatt v. Hempstead* (1962) 369 U.S. 590, 592-593 [8 L.Ed.2d 130, 132-133, 82 S.Ct. 987]), or rejected a substantial use to which the property had previously been devoted. (*Miller v. Schoene* (1928) 276 U.S. 272, 279 [72 L.Ed. 568, 571, 48 S.Ct. 246].)

Enactment of a land use regulation does not constitute a "taking" if it "substantially advance[s] legitimate state interests" and does not "den[y] an owner economically viable use of his land." (*Agins v. Tiburon* (1980) 447 U.S. 255, 260 [65 L.Ed.2d 106, 112, 100 S.Ct. 2138].) The promulgation of a zoning law which results in only a diminution in the value of the affected property is not a taking. (*Euclid v. Ambler Realty Co.* (1926) 272 U.S. 365 [71 L.Ed. 303, 47 S.Ct. 114, 54 A.L.R. 1016]; *Penn Central Transp. Co. v. New York City, supra*, 438 U.S. at p. 131 [57 L.Ed.2d at pp. 652-653]; *HFH, Ltd. v. Superior Court* (1975) 15 Cal.3d 508, 514 [125 Cal.Rptr. 365, 542 P.2d 237].)

Nevertheless, constraints imposed upon land may be "so onerous as to constitute a taking which constitutionally requires compensation." (*Goldblatt v. Hempstead, supra*, 369 U.S. at p. 594 [8 L.Ed.2d at p. 133]; see also *First Lutheran Church v. Los Angeles County, supra*, 482 U.S. at pp. 316-317 [96 L.Ed.2d at pp. 264-265]; *Andrus v. Allard* (1979) 444 U.S. 51, 65-66 [62 L.Ed.2d 210, 222-223, 100 S.Ct. 318].) This principle derives from Justice Holmes's opinion in *Penna. Coal Co. v. Mahon, supra*, 260 U.S. at pages 415-416 [67 L.Ed. at pages 325-326]: "The general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking. . . . [The occurrence of a 'taking'] is a question of degree—and therefore cannot be disposed of by general propositions."

Land use regulations have been assailed under the law of inverse condemnation on two legal fronts—"facially" (*Agins v. Tiburon, supra*, 447 U.S. at p. 260 [65 L.Ed.2d at pp. 111-112]; *Lake Nacimiento Ranch v. San Luis Obispo County* (9th Cir. 1987) 830 F.2d 977, 981) and "as applied" (*Penn Central Transp. Co. v. New York, supra*, 438 U.S. at p. 136 [57 L.Ed.2d at pp. 655-656]; *Lake Nacimiento, supra*, at pp. 980-981). These alternative theories follow from the United States Supreme Court's recognition of an

"important distinction between a claim that the mere enactment of a statute constitutes a taking and a claim that the particular impact of a government action on a specific piece of property requires the payment of just compensation." (*Keystone Bituminous Coal Assn.* v. *DeBenedictis* (1986) 480 U.S. 470, 494 [94 L.Ed.2d 472, 494, 107 S.Ct. 1232].) Because we will hold the summary judgment to have been improper if the owners' complaint is viewed as an "as applied" challenge, we need not address any issue in the context of a "facial" challenge.[6]

The parties do not dispute that the professed purpose of the subject ordinance, to utilize certain property as a buffer between two conflicting land usages, is an appropriate concern of the County. ▮ The preservation of some open space amidst populated areas is a valid exercise of the police power, intended to protect the residents of the Twain Harte area from the negative effects of excessive urbanization. (*Agins, supra*, 447 U.S. at p. 261 [65 L.Ed.2d at p. 112].) Such governmental activity has consistently been recognized as legitimate. (*Ibid.*; *American Sav. & Loan Ass'n.* v. *County of Marin* (9th Cir. 1981) 653 F.2d 364, 370.) The core issue presented by an "as applied" challenge to a zoning restriction is whether the governmental exercise of its police power "went too far" with respect to the specific piece of property before the court.[7] (*Penna. Coal Co., supra*, at pp. 415-416 [67 L.Ed.2d at pp. 325-326]; *MacDonald, Sommer & Frates* v. *Yolo County* (1986) 477 U.S. 340, 349 [91 L.Ed.2d 285, 294, 106 S.Ct. 2561]; *Williamson Planning Comm'n.* v. *Hamilton Bank* (1985) 473 U.S. 172, 199 [87 L.Ed.2d 126, 146-147, 105 S.Ct. 3108].)

---

[6] Some federal courts appear to view the United States Supreme Court's decisions as requiring proof of entirely different elements for each type of challenge. In this regard, cases such as *Lake Nacimiento, supra*, 830 F.2d at pages 980-981, have said: (i) the standard for assessing economic impact in a "facial" case is whether the regulation denies the owner all "economically viable use of his" or her land (p. 981); and (ii) the standard for assessing economic impact in an "as applied" case is whether the regulation frustrates the owner's "reasonable investment backed expectations" (pp. 980-981 and fn. 3).

However, the United States Supreme Court has never expressly endorsed such an analysis or defined either phrase. Conceptually, both phrases appear to have the same essential meaning. We thus view the distinction between a "facial" attack and an "as applied" attack as one of degree, measured by the burden imposed on the owner to prove actual economic loss of such gravity as to effectively constitute an appropriation of the property. In either case, it seems to us the quantum of economic detriment sufficient to trigger a taking should be the same.

[7] Except when discharged "under the pressure of public necessity and to avert impending peril" (*House* v. *L.A. County Flood Control Dist.* (1944) 25 Cal.2d 384, 391 [153 P.2d 950]), the police power in and of itself is not a sufficient basis upon which to deny relief to the landowner. Were it otherwise, the constitutional right of just compensation would be "completely vitiate[d]." (*Holtz* v. *Superior Court* (1970) 3 Cal.3d 296, 305 [90 Cal.Rptr. 345, 475 P.2d 441].)

▮ Distilled from the many cases which have attempted to apply such a patently nebulous notion are three principles of law relevant to the issues before us:

(1) A regulation has "gone too far" when it is arbitrary or unreasonable;

(2) A regulation has "gone too far" when, as applied to a specific piece of property, it imposes upon the owner such unreasonable economic loss as to amount to a *de facto* appropriation of the property; and

(3) An "as applied" inverse condemnation claim is "ripe" for presentation to the courts when the landowner has obtained a final decision from the appropriate governmental agency regarding the application of the regulation to the specific property in issue.

Although not expressed in so many words in their brief, the owners contend the record before the trial court raised triable issues of material fact with respect to all three propositions.

### A. *Unreasonableness/arbitrariness of the ordinance*

In their briefs on this appeal, owners maintain the rezoning wrought by Ordinance No. 1558 constituted discriminatory "spot" zoning. (Cf., *Lockhard* v. *City of Los Angeles* (1949) 33 Cal.2d 453, 461 [202 P.2d 38, 7 A.L.R.2d 990]; *Hammer* v. *Town of Ross* (1963) 59 Cal.2d 776, 781-782 [31 Cal.Rptr. 335, 382 P.2d 375]; *G&D Holland Construction Co.* v. *City of Marysville* (1970) 12 Cal.App.3d 989, 994 [91 Cal.Rptr. 227].) Whether "spot" zoning is an act which gives rise to liability in inverse condemnation is a nice question. ▮ We need not address it, however, because no right to recover on that basis was pled by the complaint, which was devoid of allegations to the effect the ordinance was arbitrary, unreasonable, or discriminatory. Instead, the focus of the complaint was the negative economic impact of the downzoning upon the owners' beneficial use of the 1.7-acre undeveloped plot. Thus, the summary judgment is not subject to challenge on the ground the ordinance was unreasonable or arbitrary. The pleadings determine what issues are "material" for purposes of section 437c. (*Dorado* v. *Knudsen Corp.* (1980) 103 Cal.App.3d 605, 611 [163 Cal.Rptr. 477].)

### B. *Economic deprivation*

"Bright line" precedent is not the prevailing jurisprudential norm in this area of the law. The United States Supreme Court, as it freely admits from time to time, has been unable to arrive at any articulable test to measure when a land use regulation goes so far in its economic consequences to a

specific piece of property as to effect a taking. The following explanation is frequently reiterated: " '[T]his Court has generally "been unable to develop any 'set formula' for determining when 'justice and fairness' require that economic injuries caused by public action be compensated by the government, rather than remain disproportionately concentrated on a few persons." Rather, it has examined the "taking" question by engaging in essentially ad hoc, factual inquiries that have identified several factors—such as the economic impact of the regulation, its interference with reasonable investment backed expectations, and the character of the government action—that have particular significance.' *Kaiser Aetna* v. *United States,* 444 U.S. 164, 175 (1979) (citations omitted). [¶] These 'ad hoc, factual inquiries' must be conducted with respect to specific property, and the particular estimates of economic impact and ultimate valuation relevant in the unique circumstances." (*Hodel* v. *Virginia Surface Mining & Recl. Assn.* (1981) 452 U.S. 264, 295 [69 L.Ed.2d 1, 28, 101 S.Ct. 2352].)

■ *Williamson Planning Comm'n.* v. *Hamilton Bank, supra*, 473 U.S. at pages 199-200 [87 L.Ed.2d at page 147], put it more succinctly: "[T]he difficult problem [is] how to define 'too far,' that is, how to distinguish the point at which regulation becomes so onerous that it has the same effect as an appropriation of the property through eminent domain or physical possession. . . . [R]esolution of that question depends, in significant part, upon an analysis of the effect the [agency's] application of the zoning ordinance . . . had on the value of [the owner's] property and investment-backed profit expectations."

The economic deprivation must be "significant enough to satisfy the heavy burden placed upon one alleging a regulatory taking." (*Keystone Bituminous Coal Assn.* v. *DeBenedictis, supra*, 480 U.S. at p. 493 [94 L.Ed.2d at p. 493].) "[W]here an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking because the aggregate must be viewed in its entirety." (*Andrus* v. *Allard, supra*, 444 U.S. at pp. 65-66 [62 L.Ed.2d at p. 223].)

■ The complaint here alleged (1) the downzoning "deprived the plaintiffs of all reasonable use of the 1.7-acre undeveloped plot," because "open space zoning has no permitted uses and conditionally allows only recreational, public utility, or agricultural uses"; (2) none of the conditionally permitted uses "are feasible because open-space zoning forbids the building of structures"; and (3) the restricted zoning on the 1.7-acre plot "prevented plaintiffs from receiving a fair return in their legitimate investment-backed expectations."

We believe this collection of phrases, when read with the developmental and zoning history of the entire 8.5-acre parcel detailed elsewhere in the complaint, suffices to allege economic deprivation so severe as to constitute a "taking."[8] Therefore, in order to secure the summary judgment it sought, the County was required to "disprove," in the jargon of section 437c, that the owners were economically harmed to the significant extent demanded by the cases. Put in a positive way, the County had to present sufficient undisputed facts to establish the downzoning did not impose on the owners economic deprivation so onerous as to constitute, in practical effect, an appropriation of the property.

On this point, the County asserts the 1.7-acre plot must as a matter of law be considered within the 8.5-acre parcel for "taking" purposes. With that predicate, the County concludes the owners suffered no substantive economic deprivation because the 8.5-acre parcel has upon it an operating shopping center of significant size and undoubted monetary benefit. If the County's position were correct, the summary judgment in its favor was properly entered.

In our view, the strict rule proposed by the County is not warranted by the few pertinent cases which treat the issue. To the contrary, the nature of a particular land use regulation has been recognized as potentially creating separate parcels for "taking" purposes. (*Aptos Seascape Corp.* v. *County of Santa Cruz* (1982) 138 Cal.App.3d 484, 495-496 [188 Cal.Rptr. 191]; cf., *Nectow* v. *Cambridge* (1928) 277 U.S. 183, 187 [72 L.Ed. 842, 844, 48 S.Ct. 447]; and *Fifth Avenue Corp.* v. *Washington County, Etc.* (1978) 282 Ore. 591 [581 P.2d 50].)

In *Aptos Seascape Corp.* v. *County of Santa Cruz, supra*, 138 Cal.App.3d 484, a corporation brought an action against the county for damages, inverse condemnation and declaratory relief, contending that in rezoning the plaintiff's property the county deprived it of all reasonable use of the land. The property in question consisted of 110 contiguous acres, 70 of which were "beachlands" and 40 acres of which were "benchlands." In addition, the plaintiff owned 200 acres of "uplands" located some distance away from the "beachlands" and "benchlands."

The effect of the ordinance in question was to disallow all development on the 70-acre "beachlands" portion of the 110-acre tract. The trial court in

---

[8] In view of the inability of the courts to fashion any kind of a usable standard, it should not surprise us if a party resorts to rather general allegations in order to attempt to plead a "taking." "Factual allegations of interference with reasonable investment backed expectations," along with an allegation of a "final decision" denying "all economically feasible use of the property," are sufficient to state an inverse cause of action. (See *MacDonald, supra*, 477 U.S. at p. 362 [91 L.Ed.2d at p. 303], White, J. dis.)

part found the ordinance, which operated to preserve the property as "open space," precluded all "reasonable use" of the beachlands and entered a money judgment for the plaintiff.

On appeal, the county argued, among other things, that the trial court "erred as a matter of law when it considered the 70-acre [beachlands] property in isolation to determine whether there had been a taking. Instead, it should have considered whether [the] ordinance . . . deprived [the owner] of all reasonable use of its entire 110-acre parcel." (138 Cal.App.3d at p. 495.) The appellate court reversed the judgment on two grounds: (1) plaintiff was not entitled to money damages[9] (*id.* at p. 494), and (2) the trial court failed to decide whether an allowance of compensating densities upon the benchlands or uplands under the county's ordinances was likely, thereby precluding a finding that a "taking" had occurred (*id.* at pp. 499-500).

The *Aptos Seascape* court followed the Ninth Circuit's decision in *American Sav. & Loan Ass'n. v. County of Marin, supra,* 653 F.2d 364. In *American Sav. & Loan Ass'n.,* the plaintiff owned 2 contiguous parcels of land, the point (20 acres) and the spit (48 acres). Marin County adopted an ordinance which reduced the number of building units permitted on each parcel and gave the point a greater density allowance than the spit. The nebulous rationale advanced by the county for the reduction and the imposition of a lower density factor on the spit was " 'particular environmental problems or certain environmental concerns that would have to be met in the development.' " (*Id.* at p. 367.) The ordinance allowed the "point" a density sufficient to make its development economically feasible.

The owner never made an attempt to secure the county's approval of any particular postordinance plan of development for the spit. Instead, asserting the spit's restricted zoning prevented its substantial beneficial use, it sued for damages in inverse condemnation, alleging the ordinance unconstitutional "facially" and "as applied" to the spit and to the point. The county secured a summary judgment in its favor.

On the owner's appeal, the county argued there was no taking, because the spit and the point, being contiguous and commonly owned, comprised a single parcel in the eyes of the law. The effect of the ordinance was merely to diminish the value of the two areas taken together as one, since the point

---

[9] On this issue, *Aptos* followed the rule established by *Agins* v. *Tiburon, supra,* 24 Cal.3d 266 [157 Cal.Rptr. 372, 598 P.2d 25], which limited the remedy available for a regulatory taking to nonmonetary relief, i.e., a declaration of invalidity or a writ of mandate. This principle was later disapproved as inconsistent with the Fifth Amendment in *First Lutheran Church, supra,* 482 U.S. 304.

retained monetary value. The owner, on the other hand, contended that since the spit and the point were zoned differently, the effect of the ordinance must be judged differently.

The Court of Appeals for the Ninth Circuit said: "[B]ecause appellant did not submit a development plan, it is unclear whether the Spit and Point would be treated separately at the development stage. This fact could be crucial. The County might make some provision for density transfers or otherwise permit shifting of benefits and burdens between the two. [Citation.] Administrative procedures governed by local ordinances play a key role in defining the nature of these benefits and burdens. Until appellant submits a development plan, and the County has an opportunity to pass on it, it is impossible to determine whether the Point and Spit ought to be treated as one parcel or as two." (635 F.2d at p. 371.)

Because the developer raised factual issues not appropriate for summary resolution under the federal standard, the Ninth Circuit reversed the judgment[10] and remanded the case for trial.

■ Although the *American Sav. & Loan Ass'n.* opinion is not clear on the point, it seems obvious the question of whether two related parcels will be treated as one in the development process is not an issue separate and apart from the question about whether there has been a "taking." To the contrary, the topics are necessarily bound up in the "ad hoc factual" (*Hodel, supra,* 452 U.S. at p. 295 [69 L.Ed.2d at p. 28]) evaluation which constitutes the test for determining a "taking." In practical effect, the court in *Aptos* came to the same conclusion. (*Aptos, supra,* 138 Cal.App.3d at pp. 499-500.)

Accordingly, we decide the law does not demand the entire 8.5-acre parcel be treated as a whole in an "as applied" inverse condemnation analysis. Rather, whether the ordinance "went so far" in its economic consequences as to effect a "taking" of the 1.7-acre undeveloped plot is an issue of fact. It entails assessment of the potential for development of each of the differently zoned properties, from the standpoint of both site economics and governmental cooperation. ■ To warrant a summary judgment in its

---

[10]The burden under Federal Rules of Civil Procedure, rule 56, is not as onerous on the moving party as it is under section 437c. Under rule 56, the moving party's obligation is met by showing the opposing party lacks evidence on some essential element of the latter's case. (*Celotex Corp.* v. *Catrett* (1986) 477 U.S. 317, 322-323 [91 L.Ed.2d 265, 273-274, 106 S.Ct. 2548].) As noted above, the respondent's lack of evidence is irrelevant under section 437c. Instead, the burden on the defendant, as the moving party under section 437c, is to affirmatively disprove, by admissible evidence, an essential element of the plaintiff's case or to prove, by admissible evidence, an affirmative defense which would bar the plaintiff's case.

favor the County was required to demonstrate: (i) the 1.7-acre plot was not economically viable apart from the larger parcel; (ii) some development would be allowed on the 1.7-acre plot; or (iii) it would grant compensating densities or other allowances on the larger, 6.8-acre shopping center parcel, in order to ameliorate the owners' loss of development options with respect to the smaller, 1.7-acre parcel.

The County's moving papers did not substantiate any of those circumstances. The economic viability of the 1.7 acres, standing alone,[11] was not addressed in any manner by the County's evidence. In addition, although the County's proof did include evidence which suggested the County might under some conditions allow development of the 1.7-acre plot or compensating development on the shopping center's 6.8 acres, the undisputed facts proposed by the County did not affirmatively establish it would, without reservation, accede to either or both of those development alternatives. Accordingly, the County failed to prove the owners did not suffer severe economic harm by the enactment of the ordinance.

## C. Ripeness

A prerequisite to the assertion of an "as applied" regulatory "taking" claim "is a final and authoritative determination of the type and intensity of development legally permitted on the subject property." (*MacDonald, supra*, 477 U.S. at p. 348 [91 L.Ed.2d at p. 294].) "Until a property owner has 'obtained a final decision regarding the application of the zoning ordinance and subdivision regulations to its property,' 'it is impossible to tell whether the land retain[s] any reasonable beneficial use or whether [existing] expectation interests ha[ve] been destroyed.' " (*MacDonald, supra*, at p. 349 [91 L.Ed.2d at p. 294], citing *Williamson Planning Comm'n.* v. *Hamilton Bank, supra*, 473 U.S. at pp. 186, 190, fn. 11 [87 L.Ed.2d at pp. 138-141].)[12]

The Supreme Court's decisions have reflected "an insistence on knowing the nature and extent of permitted development before adjudicating the

[11] The owners' complaint included allegations which detailed the history of a proposed project, never formally presented to the County, involving the construction of a post office building on the 1.7 acres. Such events may well tend to support a conclusion that the 1.7 acres is economically viable apart from the rest of the parcel. However, these facts may not be considered on this appeal because the owners' papers filed in response to the County's motion did not include any admissible evidence pertaining to the post office project. A party may not rely on the unadmitted allegations of its own pleadings in order to defeat a motion under section 437c. (*Kurokawa* v. *Blum* (1988) 199 Cal.App.3d 976, 989 [245 Cal.Rptr. 463].)

[12] The County framed the issue in its pleadings and on its motion as a failure to exhaust administrative remedies. However, this well established principle is "conceptually distinct" from the question of "ripeness" or "administrative finality" with which we are concerned. (*Williamson, supra*, 473 U.S. at pp. 190-191 [87 L.Ed.2d at pp. 141-142].)

constitutionality of the regulations that purport to limit it." (*MacDonald, supra*, 477 U.S. at p. 351 [91 L.Ed.2d at pp. 295-296].) Thus, "until the [governmental] agency has arrived at a final, definitive position" (*Williamson, supra*, 473 U.S. at p. 191 [87 L.Ed.2d at p. 141]) regarding how it will apply the regulation at issue to the particular land in question and so long as a possibility remains open that some development will be allowed, there has been "no taking." (*MacDonald, supra*, 477 U.S. at pp. 352-353 [91 L.Ed.2d at pp. 296-297].) The California Supreme Court, in another context, aptly expressed the rationale underlying these principles: "A zoning ordinance places limitations upon the use of land within designated areas in accordance with the general policy adopted by the legislative body. The ordinance may be arbitrary and discriminatory in isolated cases as applied to certain property, and compliance therewith may present unusual difficulties in many other instances. But it is manifestly impracticable, if not impossible, to enumerate in the ordinance itself the varied factual situations to which the ordinance is not applicable because of constitutional objections or other special considerations. Consequently, almost every zoning ordinance . . . contains provisions whereby an owner may apply to an administrative body for permission to put his land to a nonconforming use. . . . If the landowner is permitted to ignore the procedure set forth in the ordinance whereby he may have his property excepted from the restrictions thereof, the board's statutory power to impose terms and conditions upon particular uses of property is circumvented." (*Metcalf* v. *County of Los Angeles* (1944) 24 Cal.2d 267, 270-271 [148 P.2d 645].) Voicing essentially the same considerations, the United States Supreme Court has held an owner's failure to seek a variance from a restrictive ordinance to develop its property rendered a "taking" claim premature. (*Williamson, supra*, 473 U.S. at p. 193 [87 L.Ed.2d at p. 143].)

Whether an inverse cause of action is "ripe" appears to us to be just another aspect of the element—a "taking"—essential to the existence of the cause of action. (See *MacDonald, supra*, 477 U.S. at pp. 352-353 [91 L.Ed.2d at pp. 296-297].) If the governmental agency has not decisively acted to ban all development of the parcel, an owner's ability to use his or her property cannot be said with assurance to have been irretrievably lost. Similarly, until the agency acts with finality, it will not be known whether the development of multiple contiguous but differently zoned parcels will be treated together or separately by the agency. (See discussion, *ante*.)

■ An exception to the otherwise unyielding principle exists. A property owner is not foreclosed from showing the pursuit of the purported administrative relief would be "futile." (*American Sav. & Loan Ass'n., supra*, 653 F.2d at p. 371; *Lake Nacimiento, supra*, 830 F.2d at p. 980.) An

owner should not be required to take patently fruitless and wasteful economic steps, the outcome of which is foreknown from the nature of the history of governmental action with respect to the property. Nothing in the cases "suggests that the decisionmaker's definitive position may be determined only from explicit denials of property-owner applications for development. Nor do these cases suggest that repeated applications and denials are necessary to pinpoint that position." (*MacDonald, supra,* 477 U.S. at p. 359 [91 L.Ed.2d at p. 301], White, J. dis.; see also *Hoehne* v. *County of San Benito* (9th Cir. 1989) 870 F.2d 529, 535.)

The question is one of fact: "If appellant can bear the heavy burden of showing that compliance with local ordinances would be futile, it need not comply. We need not decide at what point it becomes futile for a landowner to submit development plans after prior submissions have been rejected by the zoning authority. . . . We remand to allow appellant the opportunity to make such a showing." (*American Sav. & Loan Ass'n., supra,* 653 F.2d at p. 371.)

 Thus, the County's failure to prove the owners did not suffer serious economic injury by virtue of the enactment of the ordinance did not of itself require the superior court to deny the County's motion for summary judgment. Instead, the summary judgment was properly granted if the undisputed facts demonstrated: (1) the County had not made a final decision about the nature and scope of development it would allow with respect to the property; and (2) viable administrative avenues were open to the owners through which they could seek such a final decision.

The County's moving papers include evidence that it had not made "a final and authoritative determination of the type and intensity of development legally permitted on the subject property." (*MacDonald, supra,* 477 U.S. at p. 348 [91 L.Ed.2d at p. 294].) The undisputed facts reflect advice, given to the owners by the County planning director, that "further development of the shopping center parcel may be possible if an appropriate application is made." In addition, the undisputed facts state in part "development might even be possible on the 1.7-acre portion of the parcel if appropriate mitigation measures were proposed to be incorporated within the project." Moreover, under state law (Gov. Code, § 65011) and apparently under the Tuolumne County ordinances, the County is empowered to grant variances from strict "open space" zoning upon certain unspecified terms and conditions.[13] It is also undisputed appellant has neither applied for a

[13] The parties' papers are confusing and conflicting when it comes to the terms of the county ordinances regarding zoning variances. No request for judicial notice of any of the ordinances was made in the court below and none was made here. However, both sides acknowl-

variance nor proposed to the proper county agency any specific plan for the development of the 1.7 acres.

Such uncontested facts establish: (i) the County had not come to a final decision about whether to foreclose all further development of the 8.5-acre parcel, including the 1.7-acre plot; and (ii) the possibility of administrative reprieve from the ordinance remained open to the owners. Accordingly, in the absence of evidence which creates a triable issue of fact about whether the owners' pursuit of the purported administrative remedy would have been futile, the summary judgment must be allowed to stand.[14]

We find evidence in the County's papers which generates a triable issue about "futility." It is undisputed the County, on its own initiative, acted peremptorily to rezone the plot from its then existing light commercial designation, which it had borne since its creation, to the more restrictive open-space category. This was in response to the general lot split application for the 1.7-acre plot which the owners submitted without an accompanying development proposal. It is inconceivable the County was blind to the reality that approval of the owners' proposed lot split would be followed by a request to permit the further development of the resulting two new parcels.

In *Hoehne* v. *County of San Benito, supra*, 870 F.2d 529, the county denied the property owner's application for a permit to construct five residences on his parcel and changed the zoning designation with respect to minimum lot sizes so as to reduce the number of structures allowed to be constructed on the parcel from five to one. The Ninth Circuit concluded those circumstances standing alone constituted evidence of "futility." The court first noted that because "[t]he record does not show that any other type of variance was available to the Hoehnes," "[a]pplication for a variance was not a 'viable option.'" (*Hoehne, supra*, at p. 535.) The court then held: "[I]t would have also been futile for the Hoehnes to seek a conditional use permit or a more favorable rezoning because in actually rezoning the tract to further restrict development, the supervisors themselves sent a clear and, we believe, final signal announcing their views as to the acceptable use of the property. . . . [I]t would have been futile for the Hoehnes to seek a

edge in their briefs the existence of a variance procedure, even though the precise provisions are not unambiguously detailed.

[14] We need not concern ourselves with, and take no position on, the interesting issue of which party has the burden at trial to first put forth evidence about administrative relief. Moreover, because the evidence of futility appears in the County's moving papers, we need not resolve any question about the identity of the party on whom section 437c would impose the burden of demonstrating futility had the evidence on the issue not been included in the County's papers.

General Plan amendment in their favor because the supervisors had amended the General Plan in a manner clearly and unambiguously adverse to the application of the landowners." (*Ibid.*)

To the same effect, in a different legal context, is *Ogo Associates* v. *City of Torrance* (1974) 37 Cal.App.3d 830 [112 Cal.Rptr. 761]. A city municipal code authorized the city council to grant variances from a zoning ordinance whenever practical difficulties and unnecessary hardships would result from strict enforcement of the ordinance. The city council rezoned the particular area simply because of, and in response to, the plaintiff's request for approval of a development project on the land. The court observed: "[I]t is inconceivable the city council would grant a variance for the very project whose prospective existence brought about the enactment of rezoning. This is not a situation where the possibility of relief from a general policy exists because of the unusual circumstances of a particular case; *to the contrary, in this instance the circumstances of the particular case gave birth to the ordinance's general policy.* To require appellants to apply to the city council for a variance on behalf of this project would be to require them to pump oil from a dry hole. . . . [¶] We conclude that appellants were not required to pursue futile administrative remedies in order to invoke the jurisdiction of the courts." (*Ogo Associates* v. *City of Torrance, supra*, 37 Cal.App.3d at p. 834, italics added.)

Facts of the same substance and import as those in *Hoehne* and *Ogo* are evident in the record before us. If such evidence will support a finding of "futility," as in *Hoehne* and *Ogo*, it is certainly sufficient here to create a triable issue of fact about whether any attempt by the owners to secure administrative relief from the ordinance would have been futile.

For the benefit of the trial court and the parties on remand, we make clear this opinion does not establish the issue of futility in favor of the owners—or the County for that matter—for any subsequent purpose in this case. We hold only that the record before the trial court on the County's motion disclosed a material triable issue about futility which precluded the granting of a summary judgment to the County.

### DISPOSITION

The County failed to meet its burden under section 437c to "disprove" that the enactment of the ordinance caused severe economic deprivation to the owners. In addition, the record before the superior court disclosed the existence of one triable issue of material fact: would the owners' pursuit of apparently available administrative means to attempt to secure relief from

the effect of the ordinance have been futile? The summary judgment should not therefore have been granted.[15]

The judgment is reversed. Appellant is awarded its costs.

Best, Acting P. J., and Baxter, J., concurred.

Respondents' petition for review by the Supreme Court was denied April 4, 1990.

---

[15] This holding makes it unnecessary for us to evaluate the issues under the assumption the owner's challenge to the ordinance was "facial" instead of "as applied." In addition, because the evidence giving rise to the triable issue about futility appears in the County's moving papers, we need not consider the content of the owners' response. (§ 437c, subd. (c); Weil & Brown, *supra*, § 10:136 rev. #1, 1989.)