[No. D026324. Fourth Dist., Div. One. Mar. 18, 1998.]

JOHN YEE et al., Plaintiffs and Appellants, v.
MOBILEHOME PARK RENTAL REVIEW BOARD, Defendant and
Appellant;
CITY OF ESCONDIDO, Real Party in Interest.

1410

**COUNSEL**

Callahan, Blaine & Williams, Daniel J. Callahan and Jim P. Mahacek for Plaintiffs and Appellants.

Endeman, Lincoln, Turek & Heater, Donald R. Lincoln and Linda B. Reich for Defendant and Appellant.

Jeffrey Epp, City Attorney, for Real Party in Interest.

**OPINION**

**NARES, J.**—In previous appeals (*Yee v. Mobilehome Park Rental Review Bd.* (1993) 17 Cal.App.4th 1097 [23 Cal.Rptr.2d 1] and *Yee v. Mobilehome Park Rental Review Bd.* (July 12, 1995) D022341 [nonpub. opn.]), plaintiffs John and Irene Yee, owners of two contiguous mobilehome parks in the City of Escondido which are subject to rent control, successfully argued in this court (after having petitions for mandate denied in the superior court) that rent control decisions made by the Escondido Mobilehome Park Rental Review Board (Board) were not adequately supported by the evidence which had been received in hearings before the Board.

In the first appeal, we reversed the board's decision to permit only a $27.50 increase in monthly rent per space, finding it was not supported by

substantial evidence (*Yee v. Mobilehome Park Rental Review Bd., supra,* 17 Cal.App.4th at p. 1105), and we remanded the matter, directing that the superior court mandate the Board to conduct a new rent increase hearing. (*Id.* at p. 1111.)

In *Yee v. Mobilehome Park Rental Review Bd., supra,* D022341, we reversed the Board's decision to permit only a $40 monthly rental increase, and because the Board had twice failed to arrive at a reasonable increase, we remanded with directions that this time the superior court fix a reasonable rental increase based upon record factors. The superior court thereafter determined that a rental increase of $96.96 monthly would be adequate to provide a fair rate of return to the Yees on their investment in the parks. No party herein now challenges the rental rate which was so determined.

The Yees now appeal, however, from the superior court's refusal to award them damages for the "lost profits" during the period when they were only permitted a $40 increase (a sum which may amount to anywhere from $500,000 to over $1 million), arguing that the actions of the Board require the Yees be indemnified under state statutes or compensated for a regulatory "taking" in violation of both state and federal constitutional provisions, that they are entitled to a jury trial on these issues, and also that their request to amend the complaint was improperly rejected. The Board argues on a cross-appeal the matter should be remanded to the Board. We consider these contentions in light of a recent California Supreme Court decision, and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

### 1.   *The Prior Proceedings*[1]

"In July 1986 the Yees purchased the Friendly Hills and Sunset Terrace mobilehome parks for a total price of $3,350,000. Friendly Hills has 87 spaces; Sunset Terrace has 72. In June 1988 Escondido voters passed a mobilehome rent control initiative ordinance (the Ordinance). It provided, among other things, for a rollback of rents to January 1, 1986, levels and designated the Escondido City Council as the Mobilehome Park Rental Review Board to consider requests for rent increases filed by park owners.

"The Ordinance provides that upon application by the lessor, '[t]he Board shall approve such rent increases as it determines to be just, fair and reasonable.' . . .

---

[1]We recite this portion of the facts from the prior appeal, *Yee v. Mobilehome Park Rental Review Bd., supra,* 17 Cal.App.4th at pages 1101-1103, footnotes in original omitted.

"⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅

"Between July 1986 (when the Yees purchased the parks) and June 1988 (when the Ordinance was passed), average rents at Friendly Hills had increased $58 or 28 percent. Average rents at Sunset Terrace had increased $61 or 30 percent. In June 1989 the Yees filed rent increase applications for both parks, seeking average increases for Friendly Hills and Sunset Terrace of 63 and 64 percent respectively. The applications included an appraisal and rate-of-return analysis in which the Yees calculated the current appreciated value of the two parks at $4,334,000. Deducting for the amount of current indebtedness, the Yees claimed equity in the two parks of approximately $1.5 million and asserted entitlement to a reasonable return on that amount. A methodology such as this which focuses on the owner's equity rather than the total cost or value of the property can be referred to generally as a 'return on equity' approach. . . . .

"⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅ ⋅

"Following a hearing in December 1990, the Board voted unanimously to authorize a rental increase of $27.50 at Sunset Terrace. A similar motion with respect to Friendly Hills carried by a vote of four to one. . . ."

### 2. *Interlude I: Yee Challenges the Ordinance as a Taking*

Before seeking rent increases, Yee filed a lawsuit asserting the Ordinance was an unconstitutional "taking." The demurrers of the city were sustained, and we affirmed. (*Yee v. City of Escondido* (1990) 224 Cal.App.3d 1349 [274 Cal.Rptr. 551].) Thereafter the California Supreme Court denied hearing, but the United States Supreme Court granted certiorari and unanimously affirmed, ruling the ordinance did not constitute a "physical taking" of the Yees' property. (*Yee v. Escondido* (1992) 503 U.S. 519 [112 S.Ct. 1522, 118 L.Ed.2d 153] (hereinafter *Yee I*).)

### 3. *Yee Challenges the Board's Determination*

While *Yee I* was still in the appellate process, following the above-noted Board determination to allow smaller increases in rent than Yee had sought, Yee petitioned for a writ of mandate in superior court to overturn the Board's $27.50-per-space rent increase decision. The superior court denied the writ, and Yee appealed.

### 4. *Proceedings on The First Board Appeal (Yee II)*

On the appeal the Yees contended "(1) the rent control ordinance is an unconstitutional denial of substantive due process; (2) the ordinance is so

worded as to be unconstitutional for denial of procedural due process; (3) the decision of the Board lacks support in substantial evidence; and (4) they are entitled to damages and attorney fees." (*Yee* v. *Mobilehome Park Rental Review Bd.*, *supra*, 17 Cal.App.4th at p. 1104 (hereinafter *Yee II*).)

We rejected the constitutional due process arguments, and declined to address the damages claim as premature, while finding the lack-of-substantial-evidence argument had merit. (*Yee II*, *supra*, 17 Cal.App.4th at pp. 1104-1111.) This court's disposition of the first appeal was: "Judgment reversed. The superior court is instructed to issue a writ directing the Board to conduct a new rent increase hearing consistent with the dictates of this opinion." (*Id.* at p. 1111.)

### 5. *Proceedings on Remand*

On January 12, 1994, the Board met to consider again the application of the Yees for a rent increase, which had been originally filed in June 1989. The attorney for the Yees argued that the evidence before the Board supported a per space rate increase of between $87 and $102 monthly in order to provide a 10 percent rate of return, which has been accepted in all these proceedings as approximately "fair."

The Board, however, rejected the Yees' arguments in support of the requested rate increase, and instead voted to authorize a $40 monthly increase only per space. In the superior court again, the Yees' petition for a writ of mandate was again denied, and the case then came to us once again on appeal.

### 6. *Interlude II: The Second "Takings" Case (Yee III)*[2]

"The day after the decision in *Yee I*, the Yees filed [an] action alleging the Ordinance effects a regulatory taking . . . . [¶] In this case (*Yee III*), the trial court sustained the City's demurrer to the complaint without leave to amend on the ground of res judicata. While the regulatory taking issue was raised in the trial court in *Yee II*, it was not expressly ruled upon by the appellate court. *We believe that the doctrine of res judicata supports the trial court's decision in this case but we do not rest our decision on its determination. Instead, we expressly rule on the regulatory taking issue.*" (*Yee III*, *supra*, D017840, italics added, fn. omitted.)

We concluded that "[e]ven if this action is not precluded by the previous suits, the Ordinance does not effect a regulatory taking. *Rent control, per se,*

[2]This portion of the facts is from the unpublished opinion in *Yee* v. *City of Escondido* (Dec. 21, 1994) D017840 (nonpub. opn.), hereinafter *Yee III*.

*is not a taking.* [Citation.]" We thus rejected Yees' challenges and affirmed the judgment. (*Yee III, supra,* D017840, italics added.)

### 7. The Second Board Appeal (Yee IV)

On the second appeal from the Board's rate-setting decision (*Yee v. City of Escondido, supra,* D022341 [nonpub. opn.] (hereinafter *Yee IV*)) we again found "the decision of the Board in this case is not supported by substantial evidence . . . ." This court's disposition of the second appeal was: "The judgment is reversed. The superior court is instructed to determine the amount of a rent increase, based on the present record, considering (1) the historical cost of the properties . . . and (2) the necessity for a 10 percent rate of return on the Yees' investment. The superior court will thereafter mandate the Board to adopt such increase." (*Yee IV, supra,* D022341.)

### 8. Return to Superior Court

In compliance with the above directions, the superior court thereafter determined that a per-space increase of $96.96 was appropriate. On March 19, 1996, the superior court ruled that (1) the Yees were not entitled to a jury trial on the issue of damages, sought under Code of Civil Procedure section 1095, (2) there was no reason to remand any part of the matter to the Board, and (3) the Yees' "lost rent" amounted to $591,415.80. The court did not then determine whether this amount was recoverable as damages.

On April 5, 1996, the superior court asked for further briefing as to damages, and on April 29, 1996, held its final hearing on the issues. After oral argument, the court took the matter under submission, and later issued a May 7, 1996, letter opinion denying the damages claim. The Yees appealed.

### 9. The Present Appeal

#### A. Statement of Decision

On April 29, 1996, the court held an oral hearing. Following oral argument, the court took this matter under submission and subsequently issued a May 7, 1996, letter opinion. In that letter opinion, the trial court ruled as follows:

"Petitioner's request for a jury trial on the issue of damages is denied. The Court may, *in its discretion,* order a jury trial on the issue of damages. See CCP 1090 and CCP 1095. The City's request to remand this matter to the

Board for decision as to the implementation of the rent increase is denied as unsupported by any authority.

"The Court in consideration of all arguments and pleadings denies Petitioners' request for damages against Respondents. The Court finds that Respondents are immune from liability pursuant to Government Code § 820.2. Respondents' actions in reviewing the rent increase application were discretionary. All of the cases in the mobilehome rent control area refer to the applications as applications for 'Discretionary Rent Increase.' See *Karrin* v. *Ocean-Aire Mobile Home Estates* (1991) 1 Cal.App.4th 1066, 1072 [2 Cal.Rptr.2d 581]; *Pinnacle Holdings, Inc.* v. *Simon* (1995) 31 Cal.App.4th 1430, 1433 [37 Cal.Rptr.2d 778]. Ministerial acts do not require the exercise of judgment and discretion. *Jenkins* v. *Knight* (1956) 46 Cal.2d 220 [293 P.2d 6]. While the Board must grant a fair and reasonable return, their determination of what constitutes a fair rate of return is an exercise of discretion.

"The Court also cannot impose a damage award against the park residents. The park residents have not intervened in this action and the Court does not have personal jurisdiction of such persons. To the extent that Petitioners request imposition of a retroactive rent increase, this request is denied. Such a request would work a tremendous hardship on the tenants. Civil Code § 798.30 requires that 90 days written notice of any rent increase be given to the park residents. While the park residents received notices of the two prior rent increases approved by the Board and have been paying such increases, the residents have not had the statutory notice of $96.96 Court-ordered increase. . . . The purpose of the 90 day notice requirement . . . is to give park residents time to decide whether to accept the increased rent or move and also to give them a chance to begin saving enough money to pay the increased rent. . . . Accordingly, the Court concludes that the $96.96 increase shall operate prospectively and shall be instituted after proper notice of the increase has been served.

"To the extent that Petitioners indicate that they will seek leave to amend to conform to proof, their request is denied as untimely."

On May 16, 1996, the court issued a judgment which stated in part:

"IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

"1. A Writ of Mandate will issue in favor of John and Irene Yee, Joint Tenants, dba Sunset Terrace Mobilehome Park, and Friendly Hills Mobile Manor, and against the Mobilehome Park Rental Review Board, commanding the Board to adopt a Resolution approving a rent increase of $96.96 . . . ."

### B. *Contentions on Appeal*

The Yees argue eight points: (1) they suffered damages; (2) the Board's actions were "arbitrary, capricious, and virtually intentional misconduct"; (3) no California court has fixed the liability for deprivation of a fair rate of return; (4) the "lost profits" were a regulatory taking; (5) they are entitled to damages for the delay; (6) they are entitled to a jury trial on these claims; (7) a state may not "statutorily immunize itself from Federal constitutional and statutory misconduct and state constitutional misconduct"; and (8) their request to amend their complaint was improperly denied.

The Board argues (1) damages were properly rejected under Code of Civil Procedure section 1095; (2) the Yees may not assert a damage claim by framing the issue as a "regulatory taking"; (3) Yees' request to amend the complaint was properly rejected; and (4) a jury trial on the issue of damages was properly rejected. The Board also argues on a cross-appeal that (5) should we determine the Yees are entitled to damages, the matter should be remanded to the Board.

Both parties stray far from relevant legal arguments, with the Yees devoting much effort to showing that the Board's conduct herein was "egregious misconduct," while the Board offers a barrage of procedural objections to considering the Yees' claim for damages. For our purposes, we address three dispositive questions: (1) Was there a compensable regulatory taking;[3] (2) are statutory damages otherwise available to the Yees; and (3) was the request to amend properly denied. We proceed to resolve these matters.

### STANDARD OF REVIEW

▆ With respect to the first two issues, whether there was here a compensable regulatory taking or any violation of statute or rights which entitles the Yees to damages, the standard of review is clear: "As the matter is a question of law, we are not bound by evidence on the question presented below or by the lower court's interpretation. [Citations.]" (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].)

As to the third question, denial of leave to amend, we review that determination for an abuse of discretion. (See, e.g., *Magpali* v. *Farmers*

---

[3]While the Board argues that the Yees did not properly assert a regulatory taking claim below, and thus have not preserved the issue for appeal, we believe that the inverse condemnation allegations were sufficiently made out below so that they may be deemed comprised within the ruling, set out in the statement of decision, that "[t]he Court *in consideration of all arguments and pleadings* denies [the Yees]' request for damages . . . ." (Italics added.)

*Group, Inc.* (1996) 48 Cal.App.4th 471, 486 [55 Cal.Rptr.2d 225].) With these principles in mind, we proceed to our analysis.

DISCUSSION

I. <em>Regulatory Taking</em>

A. *Previous Proceedings*

■    While the Yees assert they are entitled to recover damages for a "regulatory taking" (as opposed to a physical invasion of their property), such a claim cannot be maintained herein. We have in earlier proceedings (*Yee III*) determined no such claim will lie:

"In this case (*Yee III*), the trial court sustained the City's demurrer to the complaint without leave to amend on the ground of res judicata. While the regulatory taking issue was raised in the trial court in *Yee II*, it was not expressly ruled upon by the appellate court. We believe the doctrine of res judicata supports the trial court's decision in this case but we do not rest our decision on its determination. Instead, we expressly rule on the regulatory taking issue. [¶] . . .

"Even if this action is not precluded by the previous suits, the Ordinance does not effect a regulatory taking. Rent control, per se, is not a taking. [Citation.] '. . . States have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular without paying compensation for all economic injuries that such regulation entails.' [Citation.] Moreover, 'rent control legislation will be held to be constitutionally valid as a proper exercise of the police powers so long as it is "reasonably calculated to eliminate excessive rents and at the same time provide landlords with a just and reasonable return on their property." ' [Citation.]

"Here, the Yees argue the Ordinance effects a taking because it does not permit them to automatically increase rents when the mobilehome is sold or transferred. They contend rent control freezes a tenant's rent below market value which, in effect, provides the tenant with a 'premium' which the tenant can then 'sell' to a prospective purchaser. This premium, the Yees contend, rightfully belongs to the owner, not the tenant, of the mobilehome park. The Ordinance, according to the Yees, effects a taking.

" ' " 'Taking' jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated." ' [Citation.] Thus, ' "where an owner

possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking because the aggregate must be viewed in its entirety." ' [Citation.] Here, assuming the right to the 'premium' exists and is solely the Yees' legally protected right, the destruction of that one 'strand' does not constitute a taking. Therefore, under this theory the Yees' regulatory challenge must fail.

" 'In evaluating whether an ordinance on its face constitutes the taking of a landowner's property, the question is whether the ordinance substantially advances a legitimate state interest in the public welfare.' [Citation.] The ordinance 'precludes park owners from raising rents immediately to new tenants. It is a form of rent control which courts have held to be a legitimate economic regulation.' [Citation.]

" 'Unless the regulatory ordinance denies the property owner substantially all economically "viable use of [the] land," there is no compensable taking.' [Citation.] In *Yee II*, we implicitly rejected the Yees' suggestion all economically viable use of their property had been taken by finding the Yees received some, albeit improperly calculated, economic return on their investment. We remanded the consideration of the requested rate increase to the Board primarily because we found the Board's reasoning in determining a fair rate of return to the Yees was not supported by substantial evidence. [Citation.]

"The Yees' contention the ordinance fails to substantially advance a legitimate state interest must fail. The Ordinance substantially advances the City's goal of protecting current homeowners from rent increases in a captive and limited market. As recently stated by the Ninth Circuit, 'the prohibition of rent increases at the termination of a tenancy would further the law's goals, at least insofar as the purpose is to protect the investments of existing tenants.' [Citation.] '[T]he unfettered right of a park owner to raise the rent on a space when ownership of a mobile home was transferred might make it difficult for a mobile home owner to sell. . . . [T]he ordinance protects owners' investments in their units.' [Citation.]

"The Ordinance also advances the City's legitimate goal of protecting future homeowners by creating a climate in which purchasers can order and predict the economic investment they will make in the purchase of a mobilehome. The Ordinance advances legitimate City interests and is, therefore, valid.

"Finally, '[w]e reject the notion that [the transfer of the premium] constitutes an as-applied claim.' [Citation.] The premium is 'relevant only to a

facial, not an as-applied, regulatory challenge. It is not a particular *application* of the statute that gives rise to the premium; the premium arises solely from the existence of the statute itself.' [Citation.] Because we find the Ordinance a proper economic regulation on its face, the Yees' regulatory challenge must fail." (*Yee III, supra,* D017840, fn. omitted, original italics.)[4]

The central principle, of course, is (as we noted also in the above-cited opinion) that a rent control ordinance, like a zoning or land use regulation, "is not invalid and *does not bring about a compensable taking unless all beneficial use of the property is denied.* [Citations.]" (*Hansen Brothers Enterprises, Inc.* v. *Board of Supervisors* (1996) 12 Cal.4th 533, 551 [48 Cal.Rptr.2d 778, 907 P.2d 1324], italics added.) Certainly, at every stage of these proceedings, from *Yee I* and *Yee II* through *Yee III,* it has been clear that (as we noted in *Yee III*) the Yees have not been denied all beneficial use of the property, but have only suffered a reduction in their expected profits therefrom. With this proposition there can be no argument.

## B. *Redefinition of "Property"*

Recognizing this essential datum, the Yees do not even attempt to argue again that the lost profits caused by the rent control decisions of the Board were a "taking" of their property, the mobilehome parks herein. Instead, the Yees redefine their "property" in question to be, not the *parks* themselves, but the lost *profits,* termed "the rent differential (constitutional return)."

Expanding upon the definitional framework, the Yees admit that there has been no compensable taking "when the claimed damage is a loss of value to the land or value to the business entity itself. Here, Yees substitute for the lost value of their land an entirely different damage. . . . Yees' claim for damages is for the permanent regulatory taking of the difference in rent levels between the time of application and the final decision by the court validating that the [Board] had unconstitutionally denied them a constitutionally minimum return." The Yees admit their "claim is new to Federal and California jurisprudence." While we agree that, as defined above, the Yees' "claim is new to Federal and California jurisprudence," novelty alone does not indicate the merits of a legal argument. We find it unpersuasive here.

Simply put, the central principle alluded to constantly over the extended course of this litigation is that the Yees have not been denied all beneficial

---

[4]Also, as the United States Supreme Court noted in *Yee I, supra,* 503 U.S. at pages 528-529 [112 S.Ct. at page 1529]: "On their face, the state and local laws at issue here merely regulate [the Yees]' *use* of their land by regulating the relationship between landlord and tenant. 'This Court has consistently affirmed that States have broad power to regulate housing conditions in general and the landlord-tenant relationship in particular without paying compensation for all economic injuries that such regulation entails.' [Citation.]" (Original italics.)

use of the property, which has never, until this time, been understood to be anything other than the mobilehome *parks* themselves. Recognizing that the damages from regulation of the parks resulting in lowered profits are not a "taking," The Yees instead claim they have lost "all beneficial use" of the lost *profits*, which are thus, the Yees argue, compensable.

Not so. Simply to redefine the "property" at issue as being not the physical estates themselves, but the profit therefrom, is to beg the question. Clearly, at any time there has been a lower profit from property than expected, *some* of the "beneficial use" of the property is lost, in the form of *all* the "beneficial use" of the profits. Such word manipulation, however, does not create a new class of compensable taking; it is instead merely another way of stating that there have been damages. The assertion of a claim by attempting to redefine "property" will not suffice.[5]

Reduced profits are damages; they are not themselves a kind of "property" such as is discussed in the cases, and even the Yees admit "[t]he property interests subject to regulatory taking [in the relevant cases] are decidedly different" than the now-asserted "property interest" in the lost profits. The Yees' attempted redefinition of "property," however, is not acceptable as a means of reviving an often rejected claim.[6]

We thus are left, then, with the conventional definition, under which (as all parties agree) there has been no compensable regulatory taking. Further, while in the *Yee III* case we may have declined to rely upon res judicata, in this case (*Yee V*) we may not once more attempt to reevaluate this claim: It has been litigated already, not once, but twice. "In the case at bar plaintiffs

---

[5]The Yees' argument is not made more compelling by the use of the word "constitutional" as an adjective on every possible occasion.

[6]As our Supreme Court noted in a recent case, "Plaintiffs' . . . claim that [regulatory activity] caused a diminution in the *value* of their property does not supply the missing burden: a diminution in property value is not a 'taking or damaging' of the property, but an element of the measure of just compensation when such taking or damaging is otherwise proved. Thus in *HFH, Ltd.* v. *Superior Court* (1975) 15 Cal.3d 508, 518 [125 Cal.Rptr. 365, 542 P.2d 237], this court held that 'a zoning action which merely decreases the market value of property does not violate the constitutional provisions forbidding uncompensated taking or damaging . . . .' Although that was a 'regulatory taking' case, our reasoning applies as well to the present . . . case: we explained that 'Plaintiffs fail to distinguish between the "damaged" property which is a requisite for a finding of compensability and the "damages" by which courts measure the compensation due. Reasoning backwards, plaintiffs erroneously contend that since they can calculate damages (by measuring decline in market value), they must have been "damaged" within the meaning of the state Constitution.' (*Ibid.*) Plaintiffs' argument in the case at bar is equally fallacious." (*San Diego Gas & Electric Co.* v. *Superior Court* (1996) 13 Cal.4th 893, 942 [55 Cal.Rptr.2d 724, 920 P.2d 669]; see also *Kavanau* v. *Santa Monica Rent Control Bd.* (1993) 19 Cal.App.4th 730, 733, fn. 4, & 734-735 [23 Cal.Rptr.2d 724].)

do not and cannot allege a sufficient 'taking or damaging' under the law of inverse condemnation." (*San Diego Gas & Electric Co.* v. *Superior Court, supra,* 13 Cal.4th at p. 940.)

## C. *Kavanau v. Santa Monica Rent Control Board—Regulatory Taking*[7]

After the oral argument in this matter, our Supreme Court decided *Kavanau, supra,* 16 Cal.4th 761, and we ordered additional briefing. The Yees attempt to distinguish the factual and procedural situation in *Kavanau,* a case which involved a 10-unit apartment building (*id.* at p. 767), from their own mobilehome parks.[8] We do not accept the proffered distinctions. In sum, *Kavanau* supports our conclusion the Yees have not suffered a regulatory taking: "Kavanau's allegations, if true, are not sufficient to establish a taking . . . . This case does not fall within either of the 'two discrete categories of regulatory action' that constitute a taking. [Citations.] Rent control does not generally constitute a physical invasion of property [citation], and we agree with the Court of Appeal that Kavanau has not lost 'all economically beneficial or productive use of' his property [citation].

". . . Finally, the 'character of the governmental action' [citation] does not compel us to find a taking.

"This case does not involve a regulation that 'prohibited a beneficial use to which [Kavanau's building] had previously been devoted' [citation], thus interfering with Kavanau's "primary expectation" [citation]. . . . Nor did the 12 percent limit abrogate Kavanau's entire property holding, as might occur when someone owns only mineral rights and a land-use regulation prohibits mining those minerals. [Citations.] Furthermore, by imposing the 12 percent limit, the Rent Board was not acquiring 'resources to permit or facilitate uniquely public functions' such as government's 'entrepreneurial operations.' [Citation.] Nor did the 12 percent limit 'prevent the best use' of Kavanau's building or 'extinguish a fundamental attribute of ownership.' [Citation.] In addition, the Rent Board did not impose the 12 percent limit as a condition for granting a permit. [Citations.] Finally, the Rent Board has a 'legitimate . . . interest[]' in easing the burden on tenants of sudden, large rent increases, and the 12 percent limit 'substantially advance[d]' that

---

[7]Oral argument in this matter was held in June 1997, and the cause was submitted. Thereafter, the California Supreme Court decided the case of *Kavanau* v. *Santa Monica Rent Control Bd.* (1997) 16 Cal.4th 761 [66 Cal.Rptr.2d 672, 941 P.2d 851] (hereinafter *Kavanau*), on August 26, 1997. We vacated submission of this matter and requested additional briefing from the parties on the application of *Kavanau* to the issues presented in this case.

[8]The Yees also note a petition for certiorari was filed in *Kavanau* on November 21, 1997, and request we withhold decision until the United States Supreme Court acts on the petition. We decline to do so.

interest. [Citations.] *Thus, the factors that have proved relevant in other takings cases do not. indicate a taking in this case."* (*Kavanau, supra,* 16 Cal.4th at pp. 780-781, italics added.)[9]

For these reasons, there was no regulatory taking herein, and our discussion of this subject is concluded.[10]

### D. *Kavanau v. Santa Monica Rent Control Board—Due Process*

#### 1. *Due Process Violation—Remedy*

In their supplemental briefs, the Yees concentrate upon their assertion that "due process" (the Fifth Amendment to the United States Constitution and article I, section 19 of the California Constitution) requires their lost profits claim be compensable. Specifically, the Yees assert their claim under 42 United States Code section 1983,[11] as distinct from their "regulatory taking" claim, is viable.

In *Kavanau,* the apartment owner had argued in a similar manner that "because he lost rental income as a direct result of [the Board's] unconstitutional application of its 12 percent limit, he has suffered a taking requiring just compensation" (*Kavanau, supra,* 16 Cal.4th at p. 781), and our Supreme Court observed that the applicable United States Supreme Court precedents could indeed be read to support Kavanau's "argument that a due process violation in this context constitutes a taking." (*Ibid.*)

After observing that the Board had advanced reasons supporting a contrary result, however, the *Kavanau* court ruled that ". . . we *need not decide* whether a rent regulation that violates a particular property owner's rights to

---

[9]Other courts have read *Kavanau* in similar fashion, as wholly consistent with earlier cases discussing regulatory takings. See *Lechuza Villas West* v. *California Coastal Com.* (1997) 60 Cal.App.4th 218, 234-235 [70 Cal.Rptr.2d 399]: "[T]here can be no taking, temporary or permanent, until there is a final governmental determination which deprives the property owner of all or substantially all economic use of his or her property. (*Kavanau v. Santa Monica Rent Control Bd.* (1997) 16 Cal.4th 761, 773-774 [66 Cal.Rptr.2d 672, 941 P.2d 851]; *Twain Harte Associates, Ltd.* v. *County of Tuolumne* (1990) 217 Cal.App.3d 71, 88-89 [265 Cal.Rptr. 737].)"

[10]Our conclusion the Yees may not state a cause of action for inverse condemnation, of course, bears upon our determination (pt. III, *post*) as to whether or not it was an abuse of discretion to deny the Yees permission to amend their petition.

[11]42 United States Code section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

due process also constitutes a taking." (*Kavanau, supra*, 16 Cal.4th at p. 782, italics added.)

The reason the *Kavanau* court declined to resolve the issue posed there is also controlling on the disposition of the same contention in this matter: "[W]hen a due process violation is the sole basis of an asserted taking, a remedy for the due process violation, if available and adequate, is a valuable benefit that satisfies the takings clause." (*Kavanau, supra*, 16 Cal.4th at p. 783.)

Thus, assuming the "lost profits" claim in fact amounts to a due process violation, we must inquire whether there is a remedy which is "available and adequate." There is: recovery of the "lost profits" over time by means of a request to the Board for an adjustment of future rents to reflect the past deficiencies. Again, we turn to *Kavanau* for a precise resolution of the issue raised (this time paraphrasing): "We think one of the costs associated with rent control that [the Board] must consider is the cost to [the Yees] of any confiscatory rent ceilings [the Board] previously imposed on the [parks] in question. (Cf. *Communications Satellite Corp.* v. *F. C. C.* (D.C. Cir. 1977) 611 F.2d 883, 894 & fn. 19 [198 App.D.C. 60] [past deficiency 'may *not* be capitalized into the rate base for future years' unless 'rates . . . have for some time been under strictures set by an administrative agency' and the deficiency is the result of agency 'miscalculation'].) Thus, *irrespective of whether section 1983 would have afforded [the Yees] a remedy for the due process violation, [their] continuing right to an adjustment of future rents can provide an adequate remedy.*" (*Kavanau, supra*, 16 Cal.4th at p. 783, second italics added.)

As noted in the factual and procedural background, *ante*, the superior court here declined to award damages against the Board, and also declined to award damages against the park residents who "have not intervened in this action." The application of an adjustment to future rentals overcomes these procedural problems, and also results in those beneficiaries of past (improperly) low rents having to bear the burden of eventual compensation, a point also explicitly treated in *Kavanau*: "Moreover, this remedy, as opposed to an award of damages against the Rent Board, places the cost of compensating Kavanau roughly on those tenants who benefited from unconstitutionally low rents. (Cf. *State of California* v. *Levi Strauss & Co.* (1986) 41 Cal.3d 460, 472-473 [224 Cal.Rptr. 605, 715 P.2d 564] [antitrust class action applying 'fluid recovery' whereby fund roughly benefits those who suffered damages]; *Blue Chip Stamps* v. *Superior Court* (1976) 18 Cal.3d 381, 388, fn. 1 [134 Cal.Rptr. 393, 556 P.2d 755] (conc. opn. of Tobriner, J.) [price reduction as remedy for overcharges].)" (*Kavanau, supra*, 16 Cal.4th at p. 784.)

## 2. Adequacy of Remedy—Remand to Court or the Board

As noted, the remedy necessary to obviate a takings claim must be "available and adequate." In connection with whether the remedy is "adequate," in light of the Board's past intransigence, the Yees request that should any further proceedings be available to them, we remand this case again, as we did on the last appeal, to the superior court, not the Board, for resolution. We decline to do so, and the reasons are again set out in *Kavanau*: "Finally, the remedy of future rent adjustments avoids putting a reviewing court in the position of declaring the appropriate regulated rent ceiling for a particular apartment in order to measure damages. (Cf. *United States* v. *Western Pac. R. Co.* (1956) 352 U.S. 59, 63-64 [77 S.Ct. 161, 165, 1 L.Ed.2d 126] [deferring to the 'primary jurisdiction' of an administrative agency 'whenever enforcement of the claim requires the resolution of issues which . . . have been placed within the special competence of an administrative body'].) Setting rent ceilings is essentially a legislative task, and agencies, not courts, choose which administrative formula to apply. [Citation.] The state and federal Constitutions require only a fair process that reasonably takes into consideration the landlord's interests, and a landlord's return need only fall within a 'broad zone of reasonableness.' [Citation.] Accordingly, courts are in no position to determine the appropriate rent ceiling for an apartment as a means of assessing damages. We strongly resist any rule that would impose on a reviewing court the impossible task of finding somewhere in the penumbra of the Constitution a stipulation that a particular apartment in a particular building should rent for $746 per month rather than $745." (*Kavanau, supra,* 16 Cal.4th at p. 784.)

Under the clearly set out rationale above, we must decline the Yees' present request that we again invoke the remedy of remanding the case to the superior court, rather than to further proceedings before respondent the Board, at this time.[12]

## 3. Summary

The central issue on this appeal is what remedy might be available to the Yees for their "lost profits." While the Yees advance many arguments to the contrary, *Kavanau* is, in our view, fully controlling on this question:

---

[12]We in no way, however, foreclose our ability to do so should it become necessary in the future. As the *Kavanau* court observed: "Finally, we do not here decide what alternative remedy might be appropriate if a landlord can establish that the remedy of future rent adjustments is for some reason unavailable. But *before Kavanau can allege the unavailability of future rent adjustments, he must petition for those adjustments, the Rent Board must determine, subject to judicial review, their appropriate amount, and he must attempt to impose them.*" (*Kavanau, supra,* 16 Cal.4th at p. 785, italics added.)

"Put another way, the ongoing process of setting rent ceilings dispels the due process violation, which in this case is the sole basis for a potential takings clause violation. (Cf. *Mountain Water* v. *Mont. Dept. of Public Serv. Reg.* (9th Cir. 1990) 919 F.2d 593, 601 [no violation of Constitution because water utility 'may seek just compensation for its property taken through [future] rate setting'].) Accordingly, we agree with the trial court and the Court of Appeal that Kavanau has not stated a viable inverse condemnation claim.

" .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"*Kavanau I* determined that application of the Rent Board's 12 percent limit on rent increases violated Kavanau's right to due process. *The remedy of future rent adjustments available to Kavanau under the due process clause precludes a finding of a taking in this case. . . .*" (*Kavanau, supra,* 16 Cal.4th at p. 786, italics added.)

That holding applies to this case, where the Yees' remedy of seeking from Board future rent adjustments "precludes a finding of a taking in this case."

## II.   *Other Grounds for Damages*

■   The Yees also challenge the trial court's determination that damages could not be recovered under state statutes because the Board was immune under Government Code section 820.2.[13] Obviously, while this court has twice determined that the Board did not receive substantial evidence in support of a rental increase decision (and thus the Board twice abused its discretion), the Yees nowhere cites us to authority holding that a *second* abuse of discretion (as opposed to a *first* such error) removes the statutory immunities therefore. (Our own research has also found no such authority.)

Instead, the Yees reiterates the assertion (rejected above) that "[t]he issue here concerns the [the Board's] violation of Federal constitutional and statutory rights. Denial of a just and reasonable return on one's property violates the 5th Amendment to the United States Constitution . . . . [¶] Second, the [Board's] denial of Yees' constitutional rights constitutes a

---

[13]Government Code section 820.2 provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of discretion vested in him, *whether or not such discretion was abused.*" (Italics added; see also Gov. Code, §§ 815-821.)

Federal statutory violation under 42 U.S.C. section 1983 by depriving Yees of their constitutional rights under color of law. . . ."[14] The Yees last assert that "[c]ompensation is due under article I, section 19 [of the state Constitution], under inverse condemnation theory."

In other words, while not explaining how the statutory bar to damages may be avoided under state law, the Yees merely assert that because federal rights are implicated, "[a] state cannot statutorily absolve itself from liability when its agents act in violation of Federal law or the State constitution." But the "violation of Federal law or the State constitution" which is relied upon is the "takings" argument, which we have rejected above. Because there was no compensable "taking" in violation of either constitution, the question resolves itself into whether the statutory immunity set out above applies herein. Because the Yees offer neither facts, law, nor relevant reasoning in support of their contrary arguments, we must reject them.[15]

### III. *Amendment of Petition*

■ The last question is whether the Yees were improperly denied their right to amend the petition to state causes of action under the Fifth Amendment of the United States Constitution; 42 United States Code section 1983; article I, section 19 of the California Constitution; and Code of Civil Procedure section 1095. The Yees argue the proposed amendments were "tendered early within the damage phase of the case and in a manner which would be totally nonprejudicial to the [Board]."

The Yees ignore the facts that (a) the constitutional claims are (as we have held, *ante*) barred in any event, and (b) the proposed amendments were offered more than two years after the original complaint was filed, and shortly before a final resolution of all of the issues remaining before the superior court. As another court held in like circumstances, "[O]ur . . . review of the record reveals no abuse of discretion in the denial of the request for leave to amend. [The] amendment was proposed on the eve of trial, nearly two years after the complaint was originally filed. [The Yees] did not give an explanation for leaving the . . . claim[s] out of the original

---

[14]See footnote 5, *ante*.

[15]This holding disposes of the related issue as to whether the Yees were denied their right to a jury trial. "[P]laintiffs complain they were denied their right to jury trial, apparently referring to their right to receive 'just compensation, ascertained by a jury unless waived . . . .' (Cal. Const., art. I, § 19.) But as we reaffirmed in *Hensler* v. *City of Glendale* (1994) 8 Cal.4th 1, 15 [32 Cal.Rptr.2d 244, 876 P.2d 1043], 'the right to jury trial applies in inverse condemnation actions, but that right is limited to the question of damages.' There is no right to jury trial on the issue whether there has been a taking in the first instance." (*San Diego Gas & Electric Co.* v. *Superior Court, supra,* 13 Cal.4th at p. 951.) As no inverse condemnation action lies, it follows there was no erroneous denial of a jury trial thereon.

complaint or bringing the request to amend so late. 'A party who waits 18 months before attempting to amend, and then does so only after trial has commenced, and who offers no excuse for the failure, can hardly complain when the request to amend is denied.' [Citation.]" (*Magpali* v. *Farmers Group, Inc.*, *supra*, 48 Cal.App.4th at p. 486; see also *Stevenson* v. *San Francisco Housing Authority* (1994) 24 Cal.App.4th 269, 284 [29 Cal.Rptr.2d 398] ["We find no error in the denial of appellant's request to amend after having seven previous chances to state a cause of action."].)

While courts should be liberal in permitting amendments to a complaint (*Aubry* v. *Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 970-971 [9 Cal.Rptr.2d 92, 831 P.2d 317]), the proposed amendments here were both untimely and also subject to demurrer as being barred either by res judicata or various applicable limitations statutes, such as the one-year limitations period applicable to actions under 42 United States Code section 1983. In the circumstances, the proposed amendment to the Yees' complaint was properly rejected.[16]

### DISPOSITION

The judgment is affirmed. Each party is to bear its own costs on appeal.

Work, Acting P. J., and Huffman, J., concurred.

---

[16]In light of this and the preceding discussions, the cross-appeal of the Board need not be discussed.