Filed 6/22/23  Potter v. Swarovski CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DEONTAY POTTER et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>EVGENY SWAROVSKI,<br><br>Defendant and Respondent. | B315782<br><br>(Los Angeles County Super. Ct. No. 21STCV00048) |

APPEAL from an order of the Superior Court of Los Angeles County, Barbara Marie Scheper, Judge.  Affirmed.

Law Office of Gronemeier & Hickambottom, Dale. L. Gronemeier, and Elbie J. Hickambottom, Jr., for Plaintiffs and Appellants.

No appearance by Defendant and Respondent.

Deontay Potter (Deontay) and Joy Potter (Joy) (collectively, the Potters) sued attorney Evgeny Swarovski (Swarovski) and his clients for malicious prosecution relating to a contract dispute. Swarovski filed a special motion to strike the complaint pursuant to the anti-SLAPP statute (Code Civ. Proc.,[1] § 425.16). There was, of course, no dispute that the malicious prosecution claim arose from anti-SLAPP protected activity, and the trial court found the Potters had not demonstrated a probability of success on the merits. In this appeal from the order granting the anti-SLAPP motion, we consider whether the trial court correctly concluded there was no "minimal merit" showing that Swarovski's actions in the contract litigation were undertaken with malice.

## I.  BACKGROUND

### A.    *The Contract Litigation*

Deontay is the president and sole shareholder of Clean Up America, Inc. (Clean Up), which operated a construction waste recycling facility in Los Angeles. A fire broke out at the facility in 2016, which burned and smoldered for several weeks.

Efforts to suppress the fire produced a pool of contaminated wastewater, which Clean Up engaged Environmental Chemical Consulting, Inc. (ECC) to remove. David Diaz (Diaz), ECC's vice president, signed a Waste Disposal and Transportation Agreement (the contract) on behalf of ECC. Deontay also signed the contract, which identified Deontay as the waste generating party in the first line and Clean Up as the generator in the

---

[1]    Undesignated statutory references that follow are to the Code of Civil Procedure.

2

signature block. The contract includes a provision that the party prevailing in "an action . . . to enforce or interpret the terms of" the contract is entitled to attorney fees.

The relationship rapidly deteriorated, and ECC filed a complaint against Clean Up, Deontay, and others in Los Angeles County Superior Court in January 2017. As pertinent here, ECC alleged Clean Up breached the contract by failing to pay amounts due and Deontay was liable as a personal guarantor. ECC's complaint attached a Customer Credit Application purportedly signed by Deontay in which he agreed, among other things, "to act as personal guarantor and co-signer . . . for all debts incurred . . . by [Clean Up] . . . ."

Clean Up and Deontay filed a cross-complaint against ECC and Diaz alleging, among other things, that Deontay's signature on the Customer Credit Application was a forgery. A first amended cross-complaint added ECC's president, David Rains (Rains), as a defendant.

Deontay and his wife, Joy, filed for bankruptcy while the superior court litigation was pending. ECC filed a proof of claim in bankruptcy court for $212,957.40, based on Deontay's purported agreement to serve as personal guarantor for ECC. Following an evidentiary hearing at which a forensic document examiner testified for the Potters and Diaz admitted he had a felony conviction for embezzlement through forgery, the bankruptcy court determined "[Deontay's] purported signature on the personal guaranty section of the Customer Credit Application

3

[was] a forgery and [Deontay] did not in fact sign this document."[2] The bankruptcy court sustained the Potters' objection to ECC's claim and "disallow[ed] ECC's claim in its entirety as unenforceable under applicable bankruptcy and California law."

A few months after the Potters' successful objection to ECC's proof of claim in bankruptcy court, Swarovski substituted in as counsel for the ECC parties in the superior court litigation. Shortly thereafter, on October 3, 2019, Swarovski sent an email to Diaz and Rains discussing litigation strategy. Because the Potters rely solely on the email to establish Swarovski's subjective view of the purpose of ECC's lawsuit, we quote it in full:

> "Dear Davids [¶] FYI, there is a plan to dismiss Potter as a defendant right before trial. [¶] Here is why: while CUA [presumably, Clean Up America] and P [presumably, Potter] do not have any merit on the cross-complaint, Potters attorney may try to claim attorney fees even if they [lose] on everything but the forgery cause of action against Potter personally. [¶] This is because the bk judge ruled that Potter did not sign the guarantee and his signature is forged. That ruling bars us from litigating the issue of forgery. [¶] If he prevails at trial he could ask for attorney fee. If we dismiss him any time before trial starts, the[n] there is [*sic*] such right. The most he can claim is the filing fee and

---

[2] The bankruptcy court also rejected ECC's contention that Deontay's signature on certain work orders made him liable as a guarantor for Clean Up.

4

may be MSJ fee[ ] (up to 1k), which are so small they are not worth the time to file in most cases. [¶] I am tempted to dismiss the entire complaint and then just sit and wait what they do at jury trial. Then they would have to do all the work and we almost guaranteed to prevail on their breach of action cross-claim . . . . entitling us to attorney fee award :). [¶] However, our own breach of contract claim is pretty strong so lets keep it for now. [¶] Does it make any sense? It may sound counter intuitive, but trust me on this one. If you want to fall asleep further, read the attached."[3]

ECC dismissed without prejudice its claims alleged against Deontay only in October 2019. ECC's claims against other entity defendants remained pending, as did Clean Up and the Potters' cross-complaint. In January 2020 the trial court issued an order allowing pretrial discovery of the ECC parties' financial records based on a substantial probability that Clean Up and the Potters would be entitled to punitive damages.

In February 2020, ECC moved for leave to amend its complaint to add the Potters as defendants and allege different theories of recovery. Specifically, instead of alleging Deontay was liable as a personal guarantor for Clean Up, the proposed first amended complaint alleged Clean Up was an alter ego of the Potters and, in the alternative, Deontay was liable under the

---

[3]    The files attached to the email are titled "Santisas v Goodin.pdf" and "Attorneys' Fees Awards to Contract Nonsignatories_ Should Equitable Estoppel Inform the Discretion of the Courts_.pdf."

5

contract because it identified him as the waste generating party. Deontay and Clean Up opposed ECC's motion for leave to amend arguing, among other things, that the bankruptcy court's ruling barred the proposed claims against the Potters. The trial court granted ECC's motion for leave to amend.

The Potters demurred to ECC's first amended complaint, again arguing the bankruptcy court's ruling precluded the claims against them: ECC's proof of claim in the bankruptcy proceedings concerned the same primary right (the right to be paid under the contract), involved the same parties, and was subject to a final judgment on the merits. Around the same time, Deontay moved for prevailing party attorney fees based on the bankruptcy court's ruling.

ECC did not oppose the demurrer and instead dismissed the first amended complaint with prejudice in June 2020. Deontay subsequently withdrew his motion for attorney fees based on ECC's contention that the motion was premature "and in reliance on [ECC] being estopped thereby from objecting that [Deontay] should have pursued the relief earlier."

### B. The Potters' Malicious Prosecution Action and Swarovski's Anti-SLAPP Motion

The Potters subsequently filed a complaint for malicious prosecution against ECC, Diaz, Rains, and Swarovski in January 2021. The complaint alleged ECC, Diaz, and Rains maliciously prosecuted claims based on the forged signature to the Customer Credit Application and alleged all defendants—including attorney Swarovski—were liable for filing the first amended complaint after the adverse ruling in the bankruptcy court.

6

Swarovski filed a special motion to strike the Potters' complaint pursuant to the anti-SLAPP statute on behalf of himself, ECC, Diaz, and Rains. The defendants other than Swarovski settled with the Potters before the trial court ruled on the anti-SLAPP motion.

The anti-SLAPP motion argued the personal guaranty cause of action against Deontay was promptly dismissed when Swarovski substituted in as counsel and there was probable cause to sue the Potters under different theories in the first amended complaint. Swarovski suggested "[t]he whole res judicata effect of the ruling in the bankruptcy court is a complex issue, which scope lies outside of this brief," but emphasized the bankruptcy court "never ruled that the [Potters] could not be held liable under any other theory." Swarovski further contended the dismissal of the first amended complaint was not prompted by the Potters' demurrer, but rather "a combination of factors." These included the Potters' motion for attorney fees ("dismissal would serve as a complete bar to recovery"); the fact that Clean Up and the Potters were judgment-proof; the prospect of an attorney fee award if ECC, Diaz, and Rains prevail in defending against Clean Up and Deontay's cross claims in the underlying litigation; and the notion that "[t]actically it is easier to defend civil lawsuits than prosecute them . . . ."

The Potters anti-SLAPP opposition conceded the malicious prosecution complaint arose from protected litigation activity but contended they could demonstrate a probability of success on the merits. They argued Swarovski lacked probable cause to file the first amended complaint because ECC's claims were barred by res judicata, ECC's voluntary dismissal of the action was a favorable termination, and Swarovski's improper purpose in

7

filing the first amended complaint is expressed in his October 2019 litigation strategy email.

In reply, Swarovski contended the October 2019 email reflected "proper litigation tactic[s]." Specifically, although he believed the theories asserted in the first amended complaint were meritorious, he advised his clients to dismiss their original claims before trial because Clean Up and the Potters were judgment-proof and it would be wise to eliminate the possibility of an attorney fees award. Swarovski submitted excerpts of a deposition transcript in which he was asked about his "plan to dismiss Potter as a defendant right before trial" reflected in the October 2019 email and claimed that he "meant to say dismiss the entire complaint." He suggested his email's reference to "keep[ing]" a "pretty strong" contract claim showed he was "debating with [him]self as to when to do the dismissal."

### C. *The Trial Court's Ruling*

The trial court determined the Potters failed to demonstrate a probability of success on the merits and granted Swarovski's motion. The trial court found the Potters carried their burden with respect to two of the three elements of a malicious prosecution claim: ECC's voluntary dismissal of its claims in the underlying lawsuit represented a termination favorable to the Potters and Swarovski did not have probable cause to file the first amended complaint. The Potters failed, however, to "present[ ] any arguments or evidence regarding malice." "Unlike the other [d]efendants, Swarovsk[i] became involved in the case in 2019 and cannot be tarred with allegations that he was involved in forging the guaranty. In deposition[,]

8

Swarovsk[i] explained the e-mail and the reason he ultimately dismissed the amended complaint."

## II.  DISCUSSION

The Potters contend the trial court erred in finding no evidence to support the malice element of their malicious prosecution claim.  They argue Swarovski's improper purpose in filing the first amended complaint is manifest in the October 2019 email and, in any case, malice may be inferred from the weakness of the claims asserted in the first amended complaint.  Neither argument has merit.  Swarovski and ECC did not follow the "plan" sketched in the October 2019 email, and the email does not indicate Swarovski's view of the merits of the claims asserted in the first amended complaint.  Although a lack of probable cause *plus* other evidence that Swarovski did not subjectively believe the first amended complaint had merit would support a finding of malice, the Potters do not identify any such evidence in the record.

### A.     *Anti-SLAPP Law*

The anti-SLAPP statute "authorizes a special motion to strike claims 'arising from any act of [the moving party] in furtherance of [the party's] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.'  (§ 425.16, subd. (b)(1).)"  (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884.)  The statute "'does not insulate defendants from *any* liability for claims arising from the protected rights of petition or speech.  It only provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity.'"  (*Monster*

9

*Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788 (*Monster Energy*).)

"'Resolution of an anti-SLAPP motion involves two steps. First, the defendant must establish that the challenged claim arises from activity protected by section 425.16. [Citation.] If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success. [Our Supreme Court has] described this second step as a "summary-judgment-like procedure." [Citation.] The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citation.] "[C]laims with the requisite minimal merit may proceed."' [Citation.]" (*Monster Energy*, *supra*, 7 Cal.5th at 788.)

Our review of the denial of an anti-SLAPP motion is de novo. (*Monster Energy*, *supra*, 7 Cal.5th at 788.)

### B. The Potters Did Not Satisfy Their Burden as to Malice

The tort of malicious prosecution protects a person's "'interest in freedom from unjustifiable and unreasonable litigation' [citation] . . . ." (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 882 (*Sheldon Appel*), italics omitted.) "The tort consists of three elements. The underlying action must have been: (i) initiated or maintained by, or at the direction of, the defendant, and pursued to a legal termination in favor of the

10

malicious prosecution plaintiff; (ii) initiated or maintained without probable cause; and (iii) initiated or maintained with malice.  [Citations.]" (*Parrish v. Latham & Watkins* (2017) 3 Cal.5th 767, 775-776.)  Because malicious prosecution actions have "the potential to impose an undue 'chilling effect' on the ordinary citizen's willingness to report criminal conduct or to bring a civil dispute to court, . . . the tort has traditionally been regarded as a disfavored cause of action" and "the elements of the tort have historically been carefully circumscribed so that litigants with potentially valid claims will not be deterred from bringing their claims to court by the prospect of a subsequent malicious prosecution claim." (*Sheldon Appel*, *supra*, at 872.)

"'As an element of malicious prosecution, malice "reflects the core function of the tort, which is to secure compensation for harm inflicted by misusing the judicial system, i.e., using it for something other than to enforce legitimate rights and secure remedies to which the claimant may tenably claim an entitlement."' [Citation.]" (*Area 55, LLC v. Nicholas & Tomasevic, LLP* (2021) 61 Cal.App.5th 136, 169 (*Area 55*).)  "'The "malice" element . . . relates to the subjective intent or purpose with which the defendant acted in initiating the prior action. [Citation.]  The motive of the defendant must have been something other than that of bringing a perceived guilty person to justice or the satisfaction in a civil action of some personal or financial purpose.  [Citation.]  The plaintiff must plead and prove actual ill will or some improper ulterior motive.' [Citations.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292, italics omitted.)

""'Since parties rarely admit an improper motive, malice is usually proven by circumstantial evidence and inferences drawn

11

from the evidence.'" [Citation.]" (*Area 55*, *supra*, 61 Cal.App.5th at 170.) A lack of probable cause is probative of an improper motive, but it is not alone sufficient to draw such an inference. (*Gruber v. Gruber* (2020) 48 Cal.App.5th 529, 538 ["Malice requires more than proof that the party acted without probable cause"]; *Zhang v. Chu* (2020) 46 Cal.App.5th 46, 57 [the argument that a finding of no probable cause is sufficient to demonstrate malice "is legally invalid"]; *HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 218 ["the lack of probable cause must be supplemented by other, additional evidence"].)

> ### 1.    The October 2019 email is insufficient evidence of malice under the anti-SLAPP minimal merit standard

The Potters primarily attempt to carry their burden to demonstrate a probability of success in showing malice by arguing Swarovski's October 2019 email is direct evidence that the first amended complaint was filed with an improper purpose. They focus on Swarovski's reference to "all the work" Deontay would have to do if ECC dismissed Deontay immediately before trial and they suggest Swarovski "intended to impose costs on [Deontay] for the work defending a claim that was going to be dismissed before it could reach the merits."

That misreads the plain import of the email. The pertinent text has nothing to do with the burden of defending against ECC's claims. Rather, Swarovski highlighted potential advantages of dismissing ECC's "entire complaint" and forcing Clean Up and Deontay "to do all the work" *prosecuting their cross-claims*: "I am tempted to dismiss the entire complaint and

12

then just sit and wait what they do at jury trial.  Then they would have to do all the work and we almost guaranteed to prevail on their breach of action cross-claim . . . . entitling us to attorney fee award :).”

More generally, any probative value that Swarovski's sketch of his plan might have as to the malice element of a malicious prosecution claim is undermined by the fact that he and ECC did not execute that plan.  Instead of continuing to prosecute the personal guaranty cause of action against Deontay—a proposal that was qualified by Swarovski's “tempt[ation]” to dismiss the action and not pursue any affirmative claims—ECC dismissed the complaint as against Deontay soon after Swarovski sent the email.  Further, nowhere in the email did Swarovski contemplate the theories ECC subsequently asserted against the Potters in the first amended complaint.  Although Swarovski's acknowledgment that the bankruptcy ruling “bar[red] [ECC] from litigating the issue of forgery” is an admission that the personal guaranty cause of action was not viable, it is speculative to assume Swarovski understood the ruling to preclude claims against the Potters that did not depend on the authenticity of the Customer Credit Application signature.

### 2.    *Circumstantial evidence*

As we have already discussed, while a lack of probable cause can be a factor considered on the issue of malice, it is not alone sufficient to demonstrate malice.  The Potters contend Swarovski's improper purpose may also be inferred from his failure to read the bankruptcy court's ruling before he filed the first amended complaint, ECC's failure to oppose the Potters'

13

demurrer, and Swarovski's "dismissive" treatment of the res judicata issue in the anti-SLAPP motion. The first argument rests on a misreading of the record, and the others rely on speculation.

Although the trial court suggested "Swarovsk[i][ ] fail[ed] to even read the bankruptcy court decision before amending the complaint," the appellate record does not support this statement. In his deposition testimony, Swarovski admitted he likely did not review the bankruptcy court's ruling before he sent the October 2019 email. But he did testify he reviewed the ruling before dismissing the initial complaint against Deontay. Because the first amended complaint was filed after that, the only relevant evidence indicates Swarovski *did* review the bankruptcy court's ruling before filing the first amended complaint.

Turning to ECC's failure to oppose the demurrer, that is not probative of Swarovski's motives in filing the first amended complaint. Even putting aside Swarovski's assertion that there were legitimate strategic motives for that decision, the Potters' position would require parties to prosecute non-meritorious claims to the bitter end to avoid an inference of malice. That is not the law, as it would run contrary to the policy foundations of the malicious prosecution tort. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 969 ["Continuing an action one discovers to be baseless harms the defendant and burdens the court system just as much as initiating an action known to be baseless from the outset"]; *Daniels v. Robbins* (2010) 182 Cal.App.4th 204, 226 ["malice can be inferred when a party *continues* to prosecute an action after becoming aware that the action lacks probable cause"].) Further, even if Swarovski's stated reasons for dismissing the action are false and he was ultimately persuaded

14

by the Potters' res judicata argument, there is still no evidence that he believed the claims were barred when he filed the first amended complaint.[4]

The Potters additionally contend Swarovski's indifference to the viability of the claims asserted in the first amended complaint is demonstrated by his statement in the anti-SLAPP motion that "[t]he whole res judicata effect of the ruling in the bankruptcy court is a complex issue, which lies outside the scope of this brief." The Potters' framing suggests that, between the non-opposition to the demurrer and this statement, Swarovski never bothered to reckon with the preclusive effect of the bankruptcy court's ruling. It is speculative, however, to reason that Swarovski's views as to the merits of the first amended complaint at the demurrer stage and in his anti-SLAPP motion reflect his views at the time of filing. In any case, Swarovski's arguments in other parts of the anti-SLAPP motion suggest he was even then under the impression that the bankruptcy court's ruling barred only those claims premised on a personal guarantee by Deontay. He argued, for instance, that the bankruptcy court "never stated that the [Potters] did not owe ECC any money under any theory . . . ."

Because the Potters did not inquire as to "the extent of [Swarovski's] investigation and research" (*Sheldon Appel*, *supra*,

---

[4] Although the Potters' res judicata argument also appeared in the opposition to ECC's motion for leave to file the first amended complaint, we cannot assume Swarovski was persuaded by the argument at that time. The trial court, which could have denied ECC's motion on res judicata grounds (*Yee v. Mobilehome Park Rental Review Bd.* (1998) 62 Cal.App.4th 1409, 1429), granted ECC leave to file the first amended complaint.

15

47 Cal.3d at 883) in his deposition, we cannot infer that Swarovski acted with malice. The primary right theory, central to the Potters' res judicata argument, is "notoriously uncertain in application." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 395.) We do not assume that every attorney who prosecutes an action based on a misunderstanding of law does so maliciously. (*Sheldon Appel*, *supra*, at 873 ["While the filing of frivolous lawsuits is certainly improper and cannot in any way be condoned, in our view the better means of addressing the problem of unjustified litigation is through the adoption of measures facilitating the speedy resolution of the initial lawsuit and authorizing the imposition of sanctions for frivolous or delaying conduct within that first action itself, rather than through an expansion of the opportunities for initiating one or more additional rounds of malicious prosecution litigation after the first action has been concluded"].) There is accordingly no adequate showing of malice on this record.

## DISPOSITION

The order granting Swarovski's anti-SLAPP motion is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

RUBIN, P. J.

MOOR, J.